FIRST NATIONAL TRUST & SAVINGS BANK *v.* SMITH.

1. EASEMENTS—TENANCY IN COMMON—RESERVATIONS.

Tenants in common of corner lot who, at different times, conveyed their interest therein and reserved an easement at rear portion thereof for common use of such parcel together with adjacent parcel they continued to own as tenants in common after divesting themselves of title to the corner parcel *held,* to have created an easement across rear of corner lot for benefit of the adjacent parcel.

2. SAME—RESERVATIONS—TENANCY IN COMMON—JOINT TENANCY.

Reservations in conveyances by joint tenants or tenants in common need not be executed simultaneously in order that an easement be created for the benefit of property held by them jointly or in common.

3. SAME—TENANCY    IN    COMMON—RESERVATIONS—FORECLOSURE—
TRANSFER OF TITLE CARRIES APPURTENANT EASEMENTS.

Reservation of easement in rear portion of a corner lot ''for alley purposes for use of this (servient) property and for the use of the'' dominant tenement, an adjacent parcel, *held*, an easement appurtenant to the dominant tenement, not an easement in gross, which passed with the title to the dominant tenement to mortgagee from the mortgagors upon foreclosure of mortgage on dominant tenement even though commissioner's deed did not refer to the easement which had been reserved upon disposal of respective interests of mortgagors as tenants in common of the corner lot.

4. SAME—APPURTENANT—WORDS OF INHERITANCE.

Words of inheritance need not be used when reserving an easement appurtenant, and it will pass to the heirs or assigns of the owner of the dominant tenement.

5. SAME—APPURTENANT—CONVEYANCE WITH DOMINANT TENEMENT—
MORTGAGES.

Easement appurtenant to parcel adjacent to corner lot, the servient tenement, expressly reserved by tenants in common in their several conveyances of their respective interests in the corner lot while continuing to own dominant tenement as holders of mortgagor interest therein *held*, to have passed to grantees in commissioner's deed of conveyance of such adjacent parcel upon foreclosure of mortgage, notwithstanding easements did not exist at time mortgages were given (3 Comp. Laws 1929, § 14372).

6. SAME—RESERVATION BY DEED—CONTINUITY OF USE—NONUSER.

Fact that alley, expressly reserved as an easement, has been only occasionally used *held*, unimportant in suit brought to recognize easement's existence after owner of dominant tenement executed quitclaim deed to servient tenement to clear title from *lis pendens* incident to negotiations relative to payment of mortgage on servient tenement, since an easement created by deed cannot be extinguished by mere nonuser.

7. SAME—ALLEYS—QUITCLAIM DEEDS—INTENT TO ABANDON—INTENT
TO CONVEY.

> Easement of ingress and egress over 10-foot alley at rear of cor-
> ner lot *held*, not extinguished by quitclaim deed executed by
> owner of dominant estate which had held a mortgage on ser-
> vient estate in absence of any showing of intent to abandon
> the easement or of intent to deed it to former mortgagors,
> owners of servient tenement.

Appeal from St. Clair; Robertson (William), J.
Submitted April 6, 1938. (Docket No. 30, Calendar
No. 39,901.) Decided June 6, 1938. Rehearing de-
nied June 30, 1938.

Bill by First National Trust & Savings Bank
against Earl C. Smith and wife to establish an ease-
ment. Bill dismissed. Plaintiff appeals. Reversed.

*Walsh, Walsh & O'Sullivan,* for plaintiff.

*J. Frank Wilson,* for defendants.

BUTZEL, J. Plaintiff bank brought suit for recog-
nition of the existence of an easement which it
claims was conveyed to defendant by mistake. It
contends that upon receiving payment of a mort-
gage executed by defendants, it gave a quitclaim
deed to defendants solely for the purpose of dis-
charging the mortgage and that it did not intend to
relinquish or convey an easement in the premises
therein described. It seeks a decree declaring that
it retains title in the easement, the same as it held
prior to the giving of the quitclaim deed. The trial
court dismissed the bill, and plaintiff appeals.

The property involved is situated on the east side
of Military street in the city of Port Huron, Mich-
igan. At the time the suit was brought, defendants

were the owners of a lot at the southeast corner of Military and Wall streets, herein referred to as the Smith property, and consisting of Lot 26, except the south 29½ feet thereof in block 60, White's plat of the city of Port Huron. Plaintiff is the owner of property herein referred to as the bank property and consisting of the south 29½ feet of lot 26 and the north 24½ feet of lot 28, in the same block. The bank property is immediately south of, and contiguous to, the Smith property. Plaintiff claims an easement in the easterly 10 feet of the Smith property as an alley way to Wall street for the purpose of ingress and egress to and from the rear portion of the bank property.

In 1922, Henry Baird owned the Smith property and Baird and Herbert W. Smith owned the bank property. On September 18, 1922, Baird and Smith gave a first mortgage on the bank property to the plaintiff bank, and on October 22, 1923, they gave a second mortgage. These mortgages were foreclosed and on March 12, 1935, a circuit court commissioner's deed was given to the bank. This deed does not refer to the easement.

The history of the Smith property is more complicated. On November 17, 1923, Baird conveyed a half interest in the Smith lot to Herbert W. Smith. On January 15, 1924, he conveyed his remaining half interest to Herbert W. Smith, the conveyance containing the following express reservation:

"The easterly 10 feet of the premises herein described is hereby reserved for alley purposes for the use of this property and for the use of the south 29.5 feet of lot 26 and the north 24.5 feet of lot 28, block 60 White's plat."

In 1929, Herbert W. Smith deeded the Smith property to Earl C. Smith, one of the defendants herein.

The deed contained a similar reservation of an easement in the easterly 10 feet for the benefit of both properties.  In 1931, Earl C. Smith deeded the Smith property to Mary Kelly, evidently for the purpose of creating a joint tenancy, for she immediately reconveyed the property to Earl C. Smith and wife.  Both of these deeds contained the easement clause.  In 1932, Earl C. Smith and wife deeded the Smith property to Herbert W. Smith by a deed containing the easement clause and Smith on August 28, 1934, deeded the same property back to Earl C. Smith and wife, but without any reservation of an easement.  On the latter date, Earl C. Smith mortgaged the property to plaintiff bank.  On March 6, 1936, the mortgage debt was paid and the bank assigned the mortgage to the Peoples Savings Bank. On March 7, 1936, the bank executed a quitclaim deed to defendants without reserving the easement. The controversy arises as to the effect of this last deed.

At the time of the discharge of the mortgage the bank received only the amounts due on the mortgage.  It received no additional consideration for the quitclaim deed.  The vice-president of plaintiff bank testified that he had no knowledge, at the time of the transaction, of the existence of an easement. A real estate broker, who participated in the transaction and who was a witness for defendants, testified that when he saw the bank representatives in regard to taking up the mortgage, he was told to have Mr. Smith's counsel prepare the papers; that he held a consultation with Mr. Smith's counsel; that he then told the vice-president of the bank that Eugene Black (evidently Smith's counsel) had stated that there was an old *lis pendens* that should be cleared up and that inasmuch as the bank "was

going out of the picture," a quitclaim was necessary; that the officer of the bank stated that Mr. Black was to make out the papers and bring them in with the abstract and the bank's counsel would decide what was to be done. A quitclaim deed and assignment of the mortgage were brought to the bank and left there, and shortly thereafter such documents or substitutes were signed and delivered by plaintiff upon receiving the amount due on the mortgage. Evidently there was a *lis pendens* on the property. No particular attention was paid to the easement at the time and, while the bank may have been careless, the quitclaim was not given with the intention of terminating the easement.

The first question is whether an easement was ever created on the Smith property in favor of the bank property. Defendants contend that one owning only a part interest in a piece of property cannot create an easement thereon. Be that as it may, each of the joint owners of the Smith lot conveyed his interest therein subject to the easement, Baird in 1924 and Herbert W. Smith in 1929. Neither could thereafter be heard to say that his deed had not placed a burden on the Smith property for the benefit of the bank property, which they jointly owned at the time. There is no reason why the reservations in the conveyances by joint tenants or tenants in common need be executed simultaneously in order that an easement be created for the benefit of property held by them jointly or in common. The reservations resulted in the creation of an easement on the Smith property for the benefit of the bank property.

The further query arises whether the easement on the Smith property in favor of the bank property passed to the bank by the foreclosure deed given

March 12, 1935. The easement, by the very words of its creation, was not personal or in gross, but was appurtenant to the bank property and would pass with the title. The language creating the easement, hereinbefore quoted, shows that the right of way was for the use of the bank property without regard to whom its owners might be. In *Lathrop* v. *Elsner,* 93 Mich. 599, one King, the owner of a piece of real estate, conveyed the front portion thereof to a predecessor of the defendant, ''reserving from said grant the perpetual right of way for a private way through on the south side of said lot.'' Plaintiff derived his title to the rear portion from King and sued to enjoin interference with the easement. It was held the easement was appurtenant and not in gross, and passed to the grantee of King. The court said:

''The right of way reserved by the deed could have had no value to King except as it enabled him to reach the land retained by himself.''

In *Walz* v. *Walz,* 101 Mich. 167, John B. Tyler and wife owned a building divided into two stores, there being a permanent partition between. A stairway within the west store led to the second floor and opened on both sides of the partition. Tyler conveyed the west store to defendant with the following reservation:

''Said parties of the first part reserving the right to use the front stairs and the hall on the second floor in common with the owners of the premises hereby conveyed.''

Subsequently plaintiff purchased the east store, the deed making no reference to the use of the stairway. Plaintiff sued to enjoin interference with the

use. It was held that the reservation created an easement appurtenant which passed to plaintiff who could enjoin interference. See, also, *Smith* v. *Dennedy*, 224 Mich. 378. Words of inheritance need not be used when reserving an easement appurtenant, and it will pass to the heirs or assigns of the owner of the dominant tenement. We quote the syllabus from *Lathrop* v. *Elsner, supra,* which is borne out by the text:

"The general rule that in a reservation, as well as in the granting clause of a deed, the word 'heirs' must be used to create an estate which will extend beyond the life of the party in whom the estate is vested, does not apply to the reservation of a right of way which creates an easement appurtenant to the land retained by the grantor."

It is true that the case of *Negaunee Iron Co.* v. *Iron Cliffs Co.,* 134 Mich. 264, referring to incorporeal hereditaments in general, and cited by defendants, contains a statement to the contrary, but that case relied on *Lathrop* v. *Elsner, supra,* which held that the use of the words "heirs" was not necessary in the reservation of an easement appurtenant. Consequently, it must be held that an easement appurtenant was created on the Smith property for the benefit of the bank property, which easement could pass by a deed of conveyance of the bank property.

Defendants, however, contend that the bank never obtained any right to the easement, because it did not exist at the time the mortgages were given, but was subsequently created. Section 14372, 3 Comp. Laws 1929 (Stat. Ann. § 27.1140), states:

"Unless the premises described in such deed or any parcel thereof shall be redeemed within the time

limited for such redemption as herein provided, such deed shall thereupon as to all parcels not so redeemed become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title and interest which the mortgagor had at the time of the execution of the mortgage, *or at any time thereafter.*"

The words we have italicized we believe are persuasive. While no cases in this State have been cited, in which the exact question arose, a somewhat analogous situation was dealt with in *National Bank of Sturgis* v. *Levanseler,* 115 Mich. 372, and in *Sequist* v. *Fabiano,* 274 Mich. 643, where we held that fixtures annexed to the realty subsequently to the giving of the mortgage passed to the purchaser on foreclosure. An easement appurtenant, in this situation at least, is much like a fixture. The only difference is that the mortgagor cannot physically remove an easement, if he were legally allowed to do so. The mortgagor loses nothing that he might otherwise have if it be held that the easement passes to the purchaser at the foreclosure sale. The question has arisen in other States where it has been held that an easement acquired subsequently to the giving of the mortgage passes on foreclosure to the purchaser of the property. *Richmond* v. *Bennett,* 205 Pa. 470 (55 Atl. 17); *Johnson* v. *Sherman County Irrigation Water Power & Improvement Co.,* 71 Neb. 452 (98 N. W. 1096); *Stanislaus Water Co.* v. *Bachman,* 152 Cal. 716 (93 Pac. 858, 15 L. R. A. [N. S.] 359).

Defendants claim that the easement is discontinuous and, since it was not specifically mentioned in the foreclosure deed, it did not pass to plaintiff. The cases cited to support this proposition all involved easements created by implication. The ease-

ment in the instant case was created expressly by deed. It has been frequently held that a deed of the land will carry with it an easement appurtenant, created expressly by deed, although it is not specifically mentioned in the conveyance. *Lathrop* v. *Elsner, supra; Walz* v. *Walz, supra; Greve* v. *Caron,* 233 Mich. 261; *Sullivan* v. *O'Brien,* 235 Mich. 245.

The fact that the alley has been only occasionally used is not of importance. An easement created by deed cannot be extinguished by mere nonuser. There must be a showing of an intent to abandon the easement or of adverse possession. *Lathrop* v. *Elsner, supra; Murphy Chair Co.* v. *American Radiator Co.,* 172 Mich. 14; *McMorran Milling Co.* v. *Railway Co.,* 210 Mich. 381; *Greve* v. *Caron, supra; Hasselbring* v. *Koepke,* 263 Mich. 466 (93 A. L. R. 1170). There was no showing of any intent to abandon this easement or to deed it to defendants. Under the circumstances, plaintiff was entitled to the relief sought. See *Sullivan* v. *O'Brien, supra.*

The decree of the lower court is reversed, with costs to plaintiff, and decree may be entered in accordance with this opinion.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.