FRED C. WEST, Appellant, *v.* JENNIE S. TILLEY, Respondent, et al., Defendants.

Fourth Department, January 15, 1970.

*Whitbeck & Holloran* (*Walter J. Holloran* of counsel), for appellant.

*Wiser, Shaw, Freeman, Van Graafeiland, Harter & Secrest* (*Barry R. Whitman* of counsel), for respondent.

BASTOW, J. Plaintiff's appeal brings before us for review a judgment which, among other things, decreed that respondent was the owner by adverse possession as against plaintiff of a

triangular parcel of land with dimensions of approximately 55 by 40 by 23 feet fronting on Conesus Lake in Livingston County.

For many years respondent and members of her family have owned lands bounded on the west by the shore of that lake and on the east by a highway known as East Lake Road. In 1959 appellant acquired a tract of land on the east side of East Lake Road none of which abutted on the lake. The conveyance to him, however, also included a parcel of land on the west side of the highway which adjoined respondent's land on the northerly side thereof. This strip had frontages on the highway and Conesus Lake, respectively, of 10.44 feet. The other two sides of the quadrangle measured about 135 feet.

In 1925 respondent's father constructed a cement wall (to serve as a breakwater) along the westerly (shore) line of his property. This wall not only extended along all the frontage then owned by respondent's father but included the frontage (10.44 feet) subsequently acquired by appellant and an additional 12 or 13 feet in a northerly direction. Dirt was then filled in behind the wall bringing it to a level with the adjacent lands. In 1925 and for many years thereafter the shoreline at the northerly extremity of this wall curved in a generally southeasterly direction to form a cove or bay. In 1936 another concrete wall (forming another breakwater ) was constructed by respondent's husband. This commenced at the northerly end of the first wall and extended along the then shoreline in a southeasterly direction across the 10-foot strip now owned by appellant to a concrete monument set on the northerly line of respondent's property. It is these two concrete walls and the northerly line of respondent's land that form the three sides of the triangle containing the land to which respondent has been adjudged to be the owner by adverse possession.

The character of the second concrete breakwater constructed in 1936 was drastically changed, however, in 1963 when one Pope (the owner of lands to the north of the 10-foot strip owned by appellant) constructed an extension of the north-south wall along the lake front, which had been built by respondent's father in 1925. Pope then land-filled behind (and to the east) of this wall and obliterated a portion of the bay.

To sustain her claim of title by adverse possession respondent, of course, was required to establish the five essential elements that first, the possession was hostile and under claim of right; second, it was actual; third, it was open and notorious; fourth, it was exclusive; and fifth, it was continuous. (*Belotti* v. *Bickhardt*, 228 N. Y. 296, 302.) Furthermore, inasmuch as respond-

ent's claim of title was not based on a written instrument, she was by statute limited in her claim to "the premises so actually occupied, and no others," and to land that "has been usually cultivated or improved" or "has been protected by a substantial inclosure." (Real Property Actions and Proceedings Law, §§ 521, 522; formerly Civ. Prac. Act, §§ 39, 40; Code Civ. Pro., §§ 371, 372.)

We conclude, that except for the requirement that the possession was hostile and under a claim of right, which will be hereinafter discussed, the proof establishes all of these essential common-law and statutory requirements. Not only was the triangular parcel, which included the westerly portion of appellant's strip of land, enclosed (from 1936 to 1963) with two cement walls, but continuously for more than 25 years respondent and members of her family openly and exclusively occupied, dominated and controlled the parcel. In 1939 a concrete shuffleboard was constructed partially on respondent's land and the remainder on a portion of the land forming the triangle and owned by appellant's predecessor in title. The remainder of the triangular parcel was made into a lawn and shrubs planted thereon. Through the ensuing years the grass planted thereon was regularly cut during the summer months and the shrubbery pruned. On the trial appellant conceded that respondent had used the land in dispute.

Appellant contends, however, that respondent's occupation was not open and notorious because his 10-foot strip was wild, overgrown and little used; that it was not until Pope cleared out and improved his lake front property that respondent's occupation of his land became apparent from the highway. The short answer is that even a casual inspection by appellant in 1959 of the boundary lines of the property he proposed to purchase would have revealed respondent's occupation and use of the westerly portion thereof, which was then enclosed on two sides with concrete walls.

Appellant further, and vigorously, argues that respondent's possession was not hostile and under a claim of right. This contention is based on Mrs. Tilley's testimony. Thus, when asked if by the construction of the east-west wall in 1936 it was her intention to intrude on appellant's land, her reply was "we were only enclosing our own property." Later she testified that it had always been her claim that she owned appellant's land; that since 1935 she had treated it as an owner—"I claim title to everything that is within the walls." The documentary proof, however, establishes that she was mistaken in her views and claims.

This presents the issue as to whether the necessary element of hostile possession may exist although such possession is taken by the mistaken view of a claimant thereto that it was within his true boundary lines or, on the other hand, whether such a mistake prevents the existence of the requisite hostility and claim of right.

Professor Powell in discussing this question has written that " The leading case holding the mistake to be of no importance was *French* v. *Pearce* [8 Conn. 439] decided in Connecticut in 1831. In this case the court said: ' Into the recesses of his [the adverse claimant's] mind, his motives or purposes, his guilt or innocence, no inquiry is made  *  *  *. The very nature of the act (entry and possession) is an assertion of his own title, and the denial of the title of all others. It matters not that the possessor was mistaken and that had he been better informed, would not have entered on the land  *  *  *.' This viewpoint has gained increasingly widespread acceptance. The more subjectively oriented view regards the ' mistake ' as necessarily preventing the existence of the required claim of right. The leading case on this position is *Preble* v. *Maine Central R. R. Co.* [85 Me. 260] decided in 1893. This position is still followed in a few states. It has been strongly criticized as unsound historically, inexpedient practically, and as resulting in better treatment for a ruthless wrongdoer than for the honest landowner. Its harshness is substantially mitigated by a judicially accepted presumption of hostility.  *  *  * On the whole the law is simplified, in the direction of real justice, by a following of the Connecticut leadership on this point." (6 Powell, Real Property, § 1015.)

The majority, or so-called Connecticut rule, that the necessary element of hostile possession may exist although possession was taken by mistake has been recognized and restated by modern text writers. (3 Am. Jur. 2d, Adverse Possession, §§ 39–42; 2 N. Y. Jur., Adverse Possession, § 15; 3 American Law of Property, § 15.5; Ann. 80 ALR 2d 1171, 1183; 10 Univ. of Florida L. Rev., 245, 253–260.)

In this jurisdiction the majority rule has been recognized, at least where a building is erected partially on adjacent property by reason of mistake as to the location of the true boundary line. (*Belotti* v. *Bickhardt,* 228 N. Y. 296, *supra*; *Smith* v. *Egan,* 225 App. Div. 586.) In *Belotti* (*supra,* p. 302) the rule was thus stated: " Adverse possession, even when held by a mistake or through inadvertence, may ripen into a prescriptive right after twenty years of such possession [citing cases], the actual physical occupation and improvement being, in a proper case,

232

sufficient evidence of the contention to hold adversely [citing cases]."

*Van Valkenburgh* v. *Lutz* (304 N. Y. 95) relied on by appellant, is not authority to the contrary. There a closely divided court in substance held that the proof was insufficient to establish that the property had been substantially enclosed or that the premises had been cultivated or improved as mandated by the statute. (Civ. Prac. Act, §§ 39, 40, now Real Property Actions and Proceedings Law, §§ 521, 522.) Moreover, there was no proof that claimant by mistake placed a building on adjoining lands. To the contrary he testified (cf. 304 N. Y., at p. 99) that he knew at the time of construction that the building was not on his land.

We conclude that although respondent, or her predecessors in interest, took possession of appellant's land through mistake, it was not the less adverse for the reason that " It is the visible and adverse possession, with an intention to possess land occupied under a belief that it is the possessor's own, that constitutes its adverse character, and not the remote view or belief of the possessor." (2 N. Y. Jur., Adverse Possession, § 15.)

We further conclude, as stated, that the proof sustains a finding pursuant to statute (Real Property Actions and Proceedings Law, § 522) that appellant's land so possessed by respondent had been " usually cultivated or improved " if not " protected by a substantial inclosure." (Cf. *Barnes* v. *Light*, 116 N. Y. 34; *Connolly* v. *Merz*, 201 N. Y. S. 2d 401 [Meyer, J.].) In *Connolly* (*supra*, p. 404) it was written: " Cultivation and improvement consistent with the nature of the property and such as to indicate exclusive ownership of the property is all that is required [citing cases] and while ' occasional forays' or the cutting and removal of ' a load or two of thatch ' are not sufficient [citing case] a regular and consistent use has been shown here."

The judgment should be affirmed.

Marsh, J. P., Witmer and Moule, JJ., concur.

Judgment unanimously affirmed, with costs.