GEORGE B. BRADT et al., Appellants, *v.* LAWRENCE GIOVANNONE, Respondent.

Third Department, December 7, 1970.

*Nicholas D. Morsillo* for appellants.

*Frankel & Frankel* (*Jacob M. Frankel* of counsel), for respondent.

COOKE, J. This is an appeal from a judgment of the Supreme Court in favor of defendant, entered in Schenectady County on December 9, 1966, upon a dismissal of the complaint by the court at a Trial Term at the close of plaintiffs' case.

On March 14, 1945 J. M. Gaffers Company, Inc. conveyed to plaintiff Hall premises at 233 Park Place in the City of Schenectady on which was located a two-family dwelling, the parcel being described as having a frontage of 33 feet and a depth of 59.4 feet on one side and 59 feet on the other. Parallel to and 12 feet westerly of the west or rear line of the described parcel was a board fence eight feet high made of planks, across the top of which ran strands of barbed wire. Along the southerly line and running to the plank fence was a building and a picket fence ran along the north boundary. This 12-foot strip between the rear line and the plank fence was owned in 1945 by the Gaffers Company which was the fee titleholder of the land further westerly of the plank fence as well.

Plaintiffs Bradt commenced living in the lower flat on the parcel in 1937 as tenants of Gaffers, then in 1945 continued as tenants of Hall until May 3, 1959, when they entered into a purchase agreement covering the 233 Park Place property with Hall, and thereafter remained on the premises to the time of trial as contract vendees. After Hall's purchase and during the residence of the Bradts there, Hall and his tenants used and occupied the land to the rear of the dwelling and up to the board fence. Hall testified they used it everyday and there was other evidence of frequent enjoyment at least once a week. Roses and hydrangeas placed in the 18-inch strip next to the fence were cared for in summer and winter. Hall planted a lawn in the remainder of the area around 1945 and this was attended to and mown. It was the scene of picnics, family youngsters at play and relaxation for others. A small pool and gym equipment were installed there for at least eight years.

In October of 1963 defendant, whose deed purported to convey title to the 12-foot strip, tore down the board fence and erected one of wire 12 feet to the east. Thereupon, this action was commenced for a declaration that plaintiffs had acquired title by adverse possession over this 12 by 33 strip between the two fence locations or, in the alternative, an easement by prescription, together with incidental relief.

Defendant contends that Hall never acquired title by adverse possession because he occupied the premises for only nine years but plaintiffs argue that the Bradts, who continuously occupied the premises since 1937, initiated an adverse possession in Hall's behalf in 1945. For the purpose of acquiring title by adverse possession, the possession of the tenant is regarded as that of his landlord and does not break the continuity of the latter's possession (*Holtzman* v. *Douglas*, 168 U. S. 278; *King* v. *Townshend*, 78 Hun 380; 1 New York Law of Landlord and Tenant, § 7; 2 N. Y. Jur., Adverse Possession, § 93; 2 C. J. S., Adverse Possession, § 39).

Section 531 of the Real Property Actions and Proceedings Law, effective September 1, 1963 and derived from former section 41 of the Civil Practice Act, provides that where the relationship of landlord and tenant has existed between any persons, the possession of the tenant is deemed the possession of the landlord for a period of 10 years from the termination of the tenancy or, in case of an oral lease, from the last payment of rent, notwithstanding that the tenant has acquired another title or has claimed to hold adversely. While it is the general rule that the possession of a tenant is not deemed adverse to his landlord so as to enable him to acquire title as against the landlord by adverse possession (2 N. Y. Jur., Adverse Possession, § 91), section 531 only circumscribes the tenant's power in relation to *his* landlord and not against the whole world. The fact that Hall became the landlord in 1945 adequately rebuts the statutory presumption against adverse holding until the expiration of the statutory period following the termination of the Gaffers tenancy (see *Holtzman* v. *Douglas, supra,* pp. 282–283; *Bedlow* v. *New York Floating Dry Dock Co.,* 112 N. Y. 263, 288; *Whiting* v. *Edmunds,* 94 N. Y. 309, 314). More importantly, the Bradts per se are not claiming adversely (cf. 2 Harvey, Law of Real Property and Title Closing, § 807) but rather as agents of Hall.

In order to constitute an effective adverse possession, it is essential that the possession be: (1) hostile and under claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous (*Belotti* v. *Bickhardt,* 228 N. Y. 296, 302). Although Mrs. Bradt testified they always assumed that the land up to the fence was their yard, defendant points to her statement and that of her husband to the effect that they never intended to take any land away from anybody. Possession is not the less adverse because a person takes possession of the land in question innocently and through mistake, it being the

visible and adverse possession, with an intention to possess the land occupied under the belief that it is the possessor's own, that constitutes its adverse character, not the remote belief of the possessor (*Belotti* v. *Bickhardt, supra*; *West* v. *Tilley*, 33 A D 2d 228, mot. for lv. to app. den. 27 N Y 2d 481; 2 N. Y. Jur., Adverse Possession, § 15).

Although the claim of title asserted by plaintiffs is not founded upon a written instrument, there was proof sufficient to sustain a finding that the disputed strip had been " usually cultivated or improved " within the statute (Real Property Actions and Proceedings Law, § 522), in view of the character, condition and location of the property (*Bassett* v. *Nichols*, 26 A D 2d 569) and the possession being such as to indicate exclusive ownership thereof (*West* v. *Tilley, supra*). There was also evidence from which it could be found that there was a " substantial enclosure " under the statute (*McCosker* v. *Rollie Estates*, 7 A D 2d 865, affd. 8 N Y 2d 837).

That the 1959 contract of sale did not mention the 12-foot strip is not critical since New York does not demand that the subject property be expressly described in the deed or other instrument of conveyance, all that is required in this respect being privity between the claimants and their predecessors and this may be shown by deed, parol or otherwise (*Rasmussen* v. *Sgritta*, 33 A D 2d 843).

Since a prima facie claim of title by adverse possession was established (cf. *Reiter* v. *Landon Homes*, 31 A D 2d 538, mot. for lv. to app. den. 24 N Y 2d 738), it was error to dismiss the complaint at the close of plaintiffs' proof.

The judgment should be reversed, on the law and the facts, and a new trial ordered, with costs to appellant.

HERLIHY, P. J., REYNOLDS, STALEY, JR., and SWEENEY, JJ., concur.

Judgment reversed, on the law and the facts, and a new trial ordered, with costs to appellant.