CASTLE ASSOCIATES, Appellant, v IRVING SCHWARTZ, Respondent, et al., Defendant.

Second Department, July 31, 1978

**APPEARANCES OF COUNSEL**

*Robert M. Blakeman* for appellant.

*Tillim, Milgraum & Willen (Michael Permut* and *Malcolm L. Tillim* of counsel), for respondent.

## OPINION OF THE COURT

DAMIANI, J.

This is an action to compel the location and opening of an easement of ingress and egress across the lands of Irving Schwartz (hereafter defendant), which was granted by deed dated March 26, 1903.

The property involved is situated in the Town of Huntington in Suffolk County. In 1883 some 17 acres of land were acquired by one William Simpson and his wife as shown on the following diagram:

This irregularly shaped tract was longer from east to west, than it was wide from north to south. Two roads adjoin the property. Bay Avenue is a north-south roadway and abuts the eastern edge of the Simpson tract, and East Shore Road runs in the same directions and abuts the western edge. Further to the west lies a body of water known as Huntington Bay. The major portion of the tract is upland, but along its western border the land descends in a steep hill towards East Shore Road and the level of the water. Apparently the existence of this hill makes access to the interior portions of the tract from East Shore Road difficult.

In 1897 Simpson sold a small parcel to Edwin Sweet. The remainder of his land was thereafter divided into four sections. In 1903 Simpson sold the southwest section to Gilbert Crossman. Although the Crossman parcel has frontage on East Shore Road, access to the interior of the parcel is limited by the steep hill. Accordingly, the deed from Simpson to

Crossman contained a provision that the land was sold: "Together with a right of way for ingress and egress over and along a strip of land 12 feet in width directly adjoining the easterly side of said premises first above described and continuing to Bay Avenue. And the parties of the first part further covenant that when said WILLIAM SIMPSON sells any of his lots fronting on Bay Avenue he will open a road for public use 25 feet in width directly adjoining the said easterly side of said premises first above described and embracing the said 12 feet continuing to Bay Avenue, over which roadway the party of the second part shall have a right of way for ingress and egress to Bay Avenue." The terms of this grant do not locate the easement and its effect was merely to provide for a right of way running from the eastern border of the Crossman parcel across portions of either the northeast or southeast parcels retained by Simpson to Bay Avenue, depending upon the route chosen for the easement.

In 1907 Simpson sold the northeast parcel to Edward N. Emerson. Since that property fronted on Bay Avenue, the terms of the 1903 deed to Crossman obligated Simpson to open a 25-foot wide roadway from the Crossman parcel to Bay Avenue. The road was never opened and so far as this record shows, no objection to Simpson's failure to do so was ever registered.

Later in 1907 Simpson sold the northwest parcel to Juliana Ferguson and thereafter she purchased the northeast parcel from Emerson and the southwest parcel from mesne grantees of Crossman. Thus, by 1908, Ferguson owned three of the four parcels formerly owned by Simpson, who retained the southeast parcel.

In 1946 John Knutson purchased the southeast parcel from the successors in title to Simpson. When Knutson purchased the property, portions of its boundary were marked by either a barbed wire or wooden picket fence. In 1956 and 1957 Knutson replaced the existing fencing with an anchor chain-link fence on the east, north and west perimeters of his property to protect domestic, farm and game animals which he kept on the land from hunters and wild dogs. Knutson was unaware of the existence of an easement of way across his property.

Eventually, all the Ferguson land was acquired by plaintiff for the purposes of subdivision and development. In preparing a plan for the development of the former Crossman parcel,

engineering studies disclosed that because of the contour of the land, it was economically prohibitive to provide for road access to the upland portion of the parcel either from the west or north. Plaintiff attempted to purchase a small triangular corner of the Simpson-Knutson parcel, now owned by defendant, so as to provide it with a route from the rear upland area of the Crossman parcel to Bay Avenue, through the former Emerson parcel that plaintiff already owned. Defendant refused to sell.

In 1976 plaintiff commissioned a title search which disclosed the forgotten easement granted by Simpson for the benefit of the Crossman parcel. Plaintiff demanded that defendant locate and open a right of way across his property, defendant refused, and this suit resulted. Special Term held that in 1908 when Juliana Ferguson acquired both the dominant Crossman parcel and the Emerson parcel which contained a portion of the servient estate and had access to Bay Avenue, a merger of the dominant and servient estates was effected resulting in the extinguishment of the easement.

██ We hold that the easement was not extinguished or abandoned and that plaintiff is entitled to its right of way across the lands of defendant. It is fundamental that where the title in fee to both the dominant and servient tenements becomes vested in one person, an easement is extinguished (17 NY Jur, Easements and Licenses, § 106). However, in the case at bar, the easement was granted for the purpose of providing road access to and from the upland portion of the Crossman parcel which, because of the contours of the land, could not be had through the northern or western boundaries of that property. Accordingly, the grant provided that the 12-foot wide right of way was to run from the eastern boundary of the Crossman parcel across the lands then retained by Simpson. Although portions of the Emerson parcel were burdened by and servient to this easement, the western boundary of that parcel is not contiguous to the eastern boundary of the Crossman parcel; they merely touch at their respective southwestern and northeastern corners. This simply means that a portion of the easement was never in the hands of the owner of the dominant estate. In order for an owner of the dominant Crossman parcel to reach Bay Avenue by way of the servient portions of the Emerson parcel he had, by necessity, to cross the Simpson-Knutson parcel. The easement was therefore not extinguished by merger.

■ Nor do the facts of this case establish that the easement was abandoned. Easements created by grant are not lost by nonuser alone. The owner of the dominant tenement is under no duty to make use of the easement as a condition to retaining his interest therein (*Conabeer v New York Cent. & Hudson Riv. R. R. Co.,* 156 NY 474). "[W]here an abandonment of an easement is relied upon, there must be clear and convincing proof of an intention in the owner to abandon it as such", independent of the mere nonuser (*Hennessy v Murdock,* 137 NY 317, 326; see, also, *Lewisohn v Lansing Co.,* 119 App Div 393, 400).

Defendant contends that the erection of a fence around the Knutson property for more than the prescriptive period extinguished the easement by adverse possession. We disagree.

■ ■ The established rule is that the maintenance of a fence or structure across an existing right of way which bars its use as such for more than the prescriptive period will terminate the easement by adverse possession (see Ann., 1 ALR 884; Ann., 66 ALR 1099; Ann., 25 ALR2d 1265). The key fact is that the fence or obstruction must block an *existing* right of way (25 ALR2d 1325, § 26; 2 NY Jur, Adverse Possession, § 120, p 141). There are five essential elements necessary to constitute an effective adverse possession: first, the possession must be hostile and under a claim of right; second, it must be actual; third, it must be open and notorious; fourth, it must be exclusive; and fifth, it must be continuous. If any of these constituents is wanting, the possession will not effect a bar of the legal title (*Schoenfeld v Chapman,* 200 Misc 444, 449; *Doherty v Matsell,* 119 NY 646; *Belotti v Bickhardt,* 228 NY 296, 302).

In the instant case, the right of way granted in the deed from Simpson to Crossman has never been "located" and no owner of the Crossman parcel ever requested that a right of way be opened until shortly before the commencement of this action. The upland portion of the Crossman parcel remains unimproved woodland. This fact pattern is similar to *Powlowski v Mohawk Golf Club* (204 App Div 200), in which an owner had divided his property into lots and filed a plat showing the lots and the proposed streets. Powlowski was one of the purchasers of these lots and he had access to an established highway. The Mohawk Golf Club was the purchaser of other lots and it erected a fence across a proposed street which led

past the plaintiff's land to the interior of the tract which had been subdivided by the original grantor.

Powlowski sued to restrain the maintenance of the fence across the proposed street by the Mohawk Golf Club upon the ground that the golf club might acquire adverse possession of the land lying in the proposed street and thereby block its use when the entire subdivision was finally opened. The Appellate Division, Third Department, held that the erection of a fence across an unopened right of way could not give rise to an adverse possession stating (pp 203-204): "We do not approve of the conclusion that 'Unless restrained by the court such continued trespass, continuing for twenty years adversely, will entitle the defendant, its successors and assigns, as a matter of law, to continue the fence permanently and so to deprive the plaintiffs of rights, property and easements.' An adverse possession, under which prescriptive title may ripen, involves an assertion of a right such as exposes the party to an action, unless he has a grant, for it is the fact of his being thus exposed, and the neglect of the opposite party to bring suit, which is seized upon as the ground for presuming a grant in favor of long possession and enjoyment, upon the idea that this adverse possession would not have been submitted to if there had not been a grant. The whole theory of prescription depends upon a presumed grant and upon acquiescence and laches upon the part of the owner. (*Burbank v. Fay,* 65 N. Y. 57, 65, 66.) The construction of the fence does not necessarily assert title in contradiction of the real owner's title. (*Monnot v. Rudd,* 139 App. Div. 651, 654.) There is not here any assertion of a right in conflict with plaintiffs' present right. Plaintiffs have no occasion to assert their right to pass easterly until the streets have been opened, or until demand is made upon the grantor to open them and he fails to do so; no time is fixed when the streets shall be opened. The lot owners have no occasion to pass over or use streets which do not exist. (*Hinkley v. State of New York,* 202 App. Div. 570, 574; affd., 234 N. Y. 309.) We think such possession can never ripen into title as against such right as the plaintiffs may have and choose to assert later."

The court in *Powlowski* relied upon *Hinkley v State of New York* (202 App Div 570), which dealt with adverse possession of earthen fill in an unnavigable portion of the Hudson River. The substance of the holding in *Hinkley* was that a riparian owner could not acquire rights to the unnavigable portion of

the bed of a river unless and until the State sought to deepen the channel, demanded that the fill be removed, and the riparian owner refused to remove the fill for more than the statutory period. The *Hinkley* case is applicable here if one views the river as a highway or right of way and the earthen fill as an obstruction to the use of the right of way. Because the fill occupied a shallow and unusable portion of the river, no right against the State could be acquired until the State sought to open the river to traffic and the landowner refused to remove the fill for more than the statutory period.

In *O'Hara v Wallace* (83 Misc 2d 383, mod 52 AD2d 622), the question was whether a lot owner's right of egress and ingress over an undedicated street was extinguished by adverse possession. The contesting parties were the owners of certain lots of a 1905 subdivision on Fire Island. The deeds to the parties described their property by reference to a filed map and lot number. The map showed a 25-foot wide right of way named Dehnhoff Roadway which ran from Great South Bay on the north to the Atlantic Ocean on the south. The defendant owned the land on either side of this platted street adjacent to the Atlantic Ocean and over the course of many years he planted a grove of trees and other obstacles across the bed of the unopened road. The plaintiff's lots fronted on the unopened Dehnhoff Roadway to the north of defendant's property. He sought access to the oceanfront through the grove of trees planted by the defendant and demanded that the roadway be opened. The defendant refused and the plaintiff sued. Special Term held that the obstruction of an unopened right of way was not adverse as against other lot owners who had no occasion to assert their right to the easement. The court relied upon a legal presumption that the use of the servient tenement is made in subordination to the servitude and that any occupation or use which is inconsistent with the servitude is temporary until the use of the easement by the dominant tenement is required. Under those circumstances Special Term allowed the plaintiff the use of a four-foot wide pedestrian right of way to the ocean. This court agreed with that conclusion since it modified the judgment of Special Term merely by increasing the width of the right of way ordered to be opened therein from 4 feet to 10 feet (52 AD2d 622, *supra).*

In the *O'Hara* case, Special Term relied upon the 1860 Court of Appeals decision of *Smyles v Hastings* (22 NY 217),

where a large tract of property was subdivided into nine lots and a map was filed showing a proposed east-west transverse roadway. One of those lots was sold to the predecessors in title of the defendants, who fenced and obstructed the land which the plat designated as the transverse roadway. The plaintiff purchased another of the lots on this roadway and after many years he demanded that the right of way be opened. The defendants refused and plaintiff sued to compel the opening of the road. In affirming a judgment for the plaintiff, the Court of Appeals held that the plaintiff had no occasion to assert a right of way to his lot when it was wild and unoccupied. The defendants' maintenance of an obstruction was not adverse to plaintiff until such time as he had occasion to develop his property, demanded the removal of the obstruction and defendants refused.

■ The rule to be derived from these cases is that where an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence his land and such use will not be deemed adverse to the existence of the easement until such time as (1) the need for the right of way arises, (2) a demand is made by the owner of the dominant tenement that the easement be opened and (3) the owner of the servient tenement refuses to do so. Cases from other jurisdictions support this conclusion (*Litchfield v Boogher,* 238 Mo 472; *Storrow v Green,* 39 Cal App 123).

Here the upland portion of the Crossman parcel is inaccessible from East Shore Road by reason of the steep hill on the property. This upland portion of the Crossman parcel is woodland and has not been used in all the years since the easement was granted. Now the plaintiff seeks to develop the Crossman parcel and to do so it requires the use of the easement which was specifically granted for the purpose of access. It is our view that the erection of the fence on the defendant's property prior to any demand for an opening of the right of way was not adverse to the existence of the easement and that, in the light of the strong policy against the extinguishment of easements created by specific grant, the plaintiff is entitled to prevail.

Plaintiff's final contention is that in 1950, when Knutson sold a portion of the southeastern parcel fronting on Bay Avenue to his brother, he had a duty under the 1903 deed from Simpson to Crossman to open a 25-foot wide roadway. This contention is without merit. The covenant to open a road

was breached in 1907 when Simpson sold the Emerson parcel and the Statute of Limitations has long since run on any action to compel specific performance thereof.

█ The courts may exercise their equitable powers to locate an easement where the parties have failed to specifically designate the route (Ann., 110 ALR 174, § 4, p 180). Accordingly, we deem it appropriate that the plaintiff have the benefit of its original request, namely, a right of way across the northwest corner of the defendant's property. The resettled judgment should be reversed insofar as it has been appealed from, and the action remitted to Special Term for further proceedings and for the entry of an appropriate amended resettled judgment in accordance herewith.

LATHAM, J. P., SHAPIRO and MARGETT, JJ., concur.

Resettled judgment of the Supreme Court, Suffolk County, dated November 29, 1977, reversed insofar as appealed from, on the law and the facts, with costs, it is declared that plaintiff has an easement over the northwest corner of defendant's property, and the action is remitted to Special Term for further proceedings consistent with the opinion herein.