The **PERMANENT MISSION OF the IS-LAMIC REPUBLIC OF IRAN to the UNITED NATIONS and Kamal Kharazi, as Ambassador of Iran to the United Nations, Plaintiffs,**

v.

**1030 FIFTH AVENUE CORPORATION, Defendant.**

**No. 92 Civ. 1175 (CHT).**

United States District Court, S.D. New York.

Sept. 20, 1993.

Brown & Wood (Henry F. Minnerop, Stephen T. Paine, of counsel), New York City, for plaintiffs.

Richard I. Wolff, P.C., New York City, for defendant.

### OPINION and ORDER

TENNEY, District Judge:

This suit concerns an easement over a driveway located on the Upper East Side of Manhattan. Plaintiff Kamal Kharazi is the current Ambassador (the "Ambassador") of the Islamic Republic of Iran ("Iran") to the

United Nations. He resides at 1033 Fifth Avenue, New York, New York ("Residence") which is located between East 84th Street and East 85th Street. Defendant 1030 Fifth Avenue Corporation ("Coop") is a New York cooperative corporation that owns its namesake property, which is immediately to the south of 1033 Fifth Avenue. The disputed easement passes over a driveway which begins at the southeast corner of the building at 1030 Fifth Avenue on East 84th Street and runs north to the rear of the Residence.

Plaintiff brought suit in 1992 seeking a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure that the easement is in full force and effect and barring the defendant from interfering in any way with plaintiff's use of the easement. By stipulation, the other named plaintiff, the Permanent Mission of the Islamic Republic of Iran to the United Nations, withdrew its claims with prejudice. Joint Pre-trial Order dated May 7, 1993 ("JPTO"), p. 2, n. 1. Because of the diversity of citizenship of the parties and the value of the property, jurisdiction is proper under 28 U.S.C. § 1332(a)(2) (1976). In June, 1993, this court held a three day bench trial. For the reasons set out below, the court now determines that the easement claimed by the Ambassador has been extinguished and that it has not been revived.

## FACTS

Pursuant to Federal Rule of Civil Procedure 52, the Court finds the following facts:

1. The easement was created in or about 1874 when the sole owner of the real property comprising both the Residence and the Coop sold the property in separate lots to separate purchasers. These purchasers were the predecessors-in-interest to the parties here. The easement was an appurtenance of the property that would become the Residence and a burden on the real property that would become owned by the Coop. JPTO p. 4, Stipulated Fact ("SF") 8.

2. The easement has been referred to in all deeds after 1874 forming the respective chains of title to the real property at issue in this lawsuit. JPTO p. 4, SF 9.

3. Louis Gordon Hamersly conveyed the real property located at 1030 Fifth Avenue to the Coop by two deeds dated July 10, 1924 ("Hamersly Deeds"). Each Hamersly deed contains the following condition upon the conveyance: "SUBJECT however, to such right of way as may now exist over the rear 10' feet of the premises hereby conveyed in favor of the owners of premises adjoining on the north and together with the right, title and interest of the seller in and to the said easement or right of way." JPTO pp. 3–4, SF 6, 7; Plaintiff's Exhibits ("Pl. Exh.") 2, 3.

4. Mignonette Corporation conveyed the real property now located at 1033 Fifth Avenue to "Mehdi Vekil, as Ambassador of Iran to the United Nations, on behalf of the Government of Iran and respective successors" by a deed dated June 1, 1966 ("Mignonette deed"). The deed conveys the Residence "together with the right, title, and interest, if any, of the party of the first part in and to the right of way in and over a strip ten (10') feet wide being the easterly portions or rears of certain lots adjoining and lying southward of said premises to pass and repass on foot or with animals, vehicles, loads or otherwise to and from between the said premises and the northerly line of 84th Street." JPTO pp. 2–3, SF 2, 3; Pl. Exh. 1.

5. As early as 1944, but certainly by 1946, the Coop had erected a double-hinged iron gate at the southern entrance to the driveway. JPTO p. 4, SF 10, Trial Transcript ("Tr.") 8, 37–38. Generally, one side of the gate is open 9:00 a.m. to 5:00 p.m. on Monday through Friday, and between 7:00 a.m. and 3:00 p.m. on Saturday. At all other times the gate is locked. The Coop's personnel maintain possession of the key to the gate. JTPO p. 4, SF 11.

6. The Coop has a service entrance which is used frequently and is accessible through the driveway. JPTO p. 5, SF 13. The Residence also has an entrance at the rear which is accessible through the driveway. JPTO p. 5, SF 14.

7. The driveway is roughly ten feet wide. An iron bar runs across the top of the driveway gate; this bar is approximately eight feet high. Tr. 76, 77.

8. Building superintendent John Rukaj, along with other employees of the Coop, regularly park their cars on the driveway and have done so for many years. Tr. 12, 13, 46, 47, 73, 74, 84, 88. The Coop has had sole responsibility for maintaining and improving the driveway. Tr. 108, 169.

9. Sometime in the late Summer or early Autumn of 1990, the Ambassador's employees sought permission to use the driveway at the rear of 1030 Fifth Avenue to facilitate the transport of materials needed for a renovation of the Residence. Deposition of Defendant's witness Diane Peck, Defendant's Exhibit ("Def. Exh.") H at 9, Tr. 90. Permission to use the driveway was granted by the property manager of the Coop at that time, Diane Peck, subject to the condition that the Iranians's use of the driveway not interfere with the daily operations of the Coop. Def. Exh. H at 10–11, Tr. 92.

10. The Coop's superintendent, John Rukaj, allowed the Iranians onto the driveway on three occasions within a two week period during the renovation. On these occasions, Mr. Rukaj unlocked the gate so that both sides stood open, allowing the free movement of construction materials in and out of the driveway.[1] Tr. 93–97.

11. When Mr. Rukaj felt that the Iranians were interfering with the Coop's daily operations, he informed them that they could no longer use the driveway. They complied without protest. On several subsequent occasions, the Iranians requested permission to use the driveway for their renovation efforts and were denied. On none of these occasions did they protest the denials. Tr. 97–99.

12. Early in 1991 the Ambassador sought to use the alleyway behind the Residence to park his car. Def. Exh. H at 16. This required use of the Coop's driveway, which is the only access point to the alleyway from the street. Ms. Peck, the property manager, was contacted by Mr. Chasra B. Hajari, an employee of the Ambassador, who requested permission to use the driveway. Id. The Ambassador offered to pay the parking fees of any Coop employees who would be inconvenienced by such an arrangement. Id. at 17.

13. Ms. Peck referred the matter to the Board of Directors of the Coop, who denied the Ambassador's request in a letter dated April 23, 1991. Def. Exh. D.

14. Sometime after the denial, the Ambassador, through counsel, restated his request and notified the Coop of the deed language granting him an easement over the driveway, indicating his intent to pursue legal action should his request once again be denied. Def. Exh. E. The Coop persisted in its refusal.

## DISCUSSION

### A. Introduction

Defendant Coop has the burden of proving adverse use and abandonment by clear and convincing evidence. *Speigel v. Ferraro*, 73 N.Y.2d 622, 626, 541 N.E.2d 15, 16, 543 N.Y.S.2d 15, 16 (1989); *Castle Assoc. v. Schwartz*, 63 A.D.2d 481, 487, 407 N.Y.S.2d 717, 721 (2d Dep't 1978); *Landgray Assoc. v. 450 Lexington Venture, L.P.*, 788 F.Supp. 776, 781, (S.D.N.Y.1992). The Coop asserts, as affirmative defenses, first, that the easement has been extinguished through the Coop's adverse possession for the prescribed statutory period, and second, that the Ambassador has relinquished his rights to the easement through abandonment.

Plaintiff counter-argues that the Coop has not satisfied two requirements of adverse

---

1. At trial, defendant cross-examined Mr. Nurdine Vahid, the owner of the construction company that completed the renovation. Mr. Vahid testified that his employees used the driveway for at least five months during the course of the renovation. Tr. 286. Also, Mr. Vahid testified that heavy construction equipment, such as trucks and large cranes, were frequently moved into the driveway for use during the renovation. Tr. 280–285, 297–298. However, the court affords little weight to Mr. Vahid's largely uncorroborated testimony with regard to the length and manner of use that was made of the driveway. The driveway itself, which is only about ten feet wide and is usually blocked by the Coop superintendent's car, belies Mr. Vahid's assertion that sometimes "two or more" trucks traversed it simultaneously. In addition, the top of the gate, which is only eight feet high, would have prevented the passage of most large trucks or cranes. *Infra* at 3.

possession because it failed to communicate the hostile and exclusive nature of its claim. Plaintiff also asserts that, having used the property, plaintiff has shown no intention of abandoning the easement. Finally, plaintiff contends that his status as a foreign diplomat and the status of the Residence as a building reserved for public use exempt both him and the easement from the prohibitions of New York property law.

### B. *Abandonment*

New York precedent suggests that in order to prove abandonment:

it is necessary to establish both an intention to abandon and also some overt act or failure to act which carries the implication that the owner neither claims nor retains any interest in the easement. Furthermore, acts evincing an intention to abandon must be unequivocal. They must clearly demonstrate the permanent relinquishment of all right to the easement.

*Penn Central Transportation Co. v. Pirate Canoe Club, Inc.*, 463 F.2d 127 (2nd Cir.1972) at 128–29 (quoting *Gerbig v. Zumpano*, 7 N.Y.2d 327, 331, 165 N.E.2d 178, 181, 197 N.Y.S.2d 161, 164 (1960)) (citations omitted).

Defendant Coop argues that plaintiff has indicated an intent to abandon the easement by failing to protest against the continuing imposition of a gate over the driveway and to the Coop's denial of permission to use the driveway during the renovation of the Residence. Defendant further points to the extensive use it has made of the easement property, all without the plaintiff's protestation. Finally, defendant implies that plaintiff's prolonged period of nonuse of the easement indicates an intent to abandon it.

■ The court disagrees with defendant's contentions. New York law clearly disfavors forfeiture of easements. 463 F.2d 127 at 126. Thus, courts are reluctant to find an abandonment without "clear and convincing proof of an intention to abandon." *Castle Assoc.*, 63 A.D.2d at 487, 407 N.Y.S.2d at 721. De-

fendant has failed to meet this burden for several reasons.

■ First, defendant asserts that abandonment should be found when nonuse, continuing for a prolonged period of time, is coupled with the defendant's erection of the gate and maintenance of sole possession of the keys, as well as its practice of parking cars on the easement. However, New York courts have consistently held that "abandonment necessarily implies non-user, but non-user does not create abandonment no matter how long it continues." *Consolidated Rail Corp. v. MASP Equipment Corp.*, 67 N.Y.2d 35, 39, 499 N.Y.S.2d 647, 649, 490 N.E.2d 514, 516 (1986), (quoting *Welsh v. Taylor*, 134 N.Y. 450, 457, 31 N.E. 896, 898 (1892)). In addition, abandonment may not be proven merely by unilateral acts on the property such as those alleged by defendant. Rather, there must be "conduct of the owner of the easement definitely evincing an intention to surrender the right." *Iacovelli v. Schoen*, 170 A.D.2d 1044, 1045, 566 N.Y.S.2d 428, 429 (4th Dep't 1991) (quoting 49 N.Y.Jur.2d, Easements § 185, at 315).

Plaintiff's failure to protest against the gate or demand a key does not rise to the level of "acts evincing an intention to abandon [that are] unequivocal." *Gerbig v. Zumpano*, 7 N.Y.2d 327, 331, 165 N.E.2d 178, 181, 197 N.Y.S.2d 161, 164 (1960). The parties have stipulated that the gate remained open for significant periods of time. Also, plaintiff has argued that the gate did not actually infringe upon his use and enjoyment of the easement until early in 1991. It could thus be that plaintiff merely felt that the gate was not enough of a burden to require corrective action.[2] Therefore, plaintiff's failure to press his rights cannot be unequivocally construed as an indication of his intent to relinquish any rights he may have had in the easement.

Likewise, plaintiff's custom of requesting the Coop's permission before using the driveway cannot be considered an unequivocal act. According to testimony at trial, plaintiff requested permission to use the easement on

---

**2.** Indeed, plaintiff argues that he failed to protest the imposition of the gate because it "did not bar the Ambassador's use of the easement" until he requested to park his car in the driveway. Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Pl. Prop. Find.") at 11.

primarily two occasions,[3] one involving the renovation of the Residence and the other involving the use of the easement on a daily basis in order to park the Ambassador's car. Both of these occasions could be considered extraordinary and disruptive events that may have engendered a request to use the easement without necessarily indicating an intention to relinquish it.[4] Thus defendant's claim of abandonment fails for lack of evidence of clear intent to abandon on the plaintiff's part.

## C. Adverse Use [5]

■ Termination of an easement by adverse use requires that the use be hostile and under a claim of right, actual, open and notorious, exclusive and continuous for the prescriptive period. *Belotti v. Bickhardt*, 228 N.Y. 296, 302, 127 N.E. 239, 241 (1920); *Castle Assoc.*, 63 A.D.2d at 487, 407 N.Y.S.2d

3. The court is aware that plaintiff made several distinct requests to use the driveway during renovation of the Residence. Tr. 97–99. The court grants little significance to the repetition of the requests for the purposes of establishing intent, however, as they may have been provoked by the extraordinary circumstances of the renovation.

4. According to the Ambassador's chauffeur, Mr. Chasra Hajari, the Ambassador failed to demand that the Coop superintendent park his car elsewhere than on the easement out of "kindness." Tr. 434.

5. Although the doctrine is usually referred to as one of "adverse possession," legal authority discusses the doctrine as applied to easements as "adverse use," most likely reflecting the unique nature of an easement as a right in use, rather than possession. *Powell on Real Property*, Vol. 3, ¶ 424, 34–264; *Landgray Assoc.*, 788 F.Supp. at 781.

6. In its memoranda of law, defendant appears to argue that, since the deed transferring the Residence to the plaintiff referred to the easement in quitclaim language, the deed somehow failed to convey title in the easement. Defendant's Pre-Trial Memorandum of Law ("Def.Pre–Tr.Mem.") at 6–8. This line of argument is unpersuasive. The main purpose of quitclaim language is to release the grantor from any potential liability to the grantee should title be defective. *See Powell on Real Property*, Vol. 6A, ¶ 897[1], 81A–29. However, the use of quitclaim language alone will not fail to convey rights, if the grantor has such rights to convey. *Id.* The most that can be said is that use of quitclaim language may put

at 721. The act that starts the prescriptive period running must be one that is "*clearly* wrongful to the easement owner." *Powell on Real Property*, Vol. 3, ¶ 424, 34–264 (emphasis in original). The purpose for this requirement is to give notice to the easement owner of the adverse claim.[6] *Id.* The adverse user in New York bears the burden of establishing adverse use by clear and convincing evidence. *Speigel v. Ferraro*, 73 N.Y.2d at 626, 541 N.E.2d at 16, 543 N.Y.S.2d at 16; *Landgray Assoc.*, 788 F.Supp. at 781.

Credible testimony at trial established that defendant Coop erected a gate over the easement sometime between 1944 and 1946.[7] Both parties stipulated that the gate is open for a limited time during daylight hours and is locked the rest of the time. *Infra* at 3. Also, defendant has presented credible evidence indicating that they are currently and always have been the sole owners of a key to the gate.[8]

the grantee on notice that the rights purportedly being conveyed are suspect.

7. Testimony concerning the duration of the gate's existence was provided by defendant's witnesses Dr. Philip Weidel and Col. Hugh Bullock, residents of 1030 Fifth Avenue since 1946 and 1944, respectively. Tr. 7, 8, 37, 38. The court finds their testimony to be credible and accords it weight.

8. Plaintiff presented testimony by Mr. Hajari, who claimed that he had seen an employee of the Residence open the gate with a key, and that the employee told him that the key had been obtained by the "administrator under the Shah's regime" for the Ambassador's use. Tr. 424–430. However, plaintiff failed to submit the actual key into evidence or to substantiate its existence by corroborating testimony. In addition, the testimony concerning the source of the key must be discounted as hearsay, since it is an out of court statement admitted for its truth. Also, defendant's witnesses were unwavering in their assertion that the Coop at all times had sole possession of the key. Especially credible on this point was the testimony of Col. Hugh Bullock, a Coop resident with responsibility for building security, who testified that he instructed new superintendents never to release copies of the key. Tr. 43. Also, the building superintendent, John Rukaj, testified that he never gave the key to any person not affiliated with the Coop. Tr. 111. Finally, the parties have stipulated that, as a matter of policy, the Coop managers change the lock after a turnover of superintendents. Tr. 150–151. Thus it is impossible to determine under what pretext, if any, the Ambassador had possession of the key, or indeed if he ever had possession.

Plaintiff apparently has no quarrel over the actual, open and notorious and continuous nature of the Coop's use of the easement.[9] Plaintiff asserts, however, that the Coop's use was neither hostile nor exclusive; therefore, the adverse possession claim should fail as a matter of law. Plaintiff's Pre-Trial Memorandum of Law ("Pl. Pre-Tr. Mem.") at 13–14. The court disagrees with plaintiff's assertions.

1. *Hostile Use*

In support of the first assertion, plaintiff offers only that the Coop's use of the easement was insufficient to provide notice of a hostile claim. However, under New York law the element of hostile use does not require a showing of specific acts. Rather, "all that is required is a showing that the possession constitutes an actual invasion of or infringement upon the owner's rights." *Sinicropi v. Town of Indian Lake*, 148 A.D.2d 799, 800, 538 N.Y.S.2d 380 (3d Dep't 1989) at 381.

By erecting a gate over the easement and retaining sole possession of the key thereto, defendants have clearly infringed on the plaintiff's right to unrestricted use of the easement. Plaintiff has argued that the gate did not actually restrict his use of the easement because it could be opened from the inside, thus permitting occupants of the building to walk across the driveway and exit onto the street. Pl. Prop. Find. at 12. However, it is indisputable that the driveway could not be accessed by the Ambassador or his staff from the street once the gate was closed. *Infra* at 3. Also, testimony at trial indicated that Coop employees regularly parked their cars over the driveway, thus further interfering with whatever use could be made of the easement. *Infra* at 4.

Certainly, such a diminishment in use must count as an infringement on the plaintiff's rights sufficient to warrant a finding of hostility. In addition, defendant has provided testimony by Coop residents that at all times they believed the Coop to be the sole owner of the driveway. Tr. 49, 318–20. While not

sufficient in itself, this belief, coupled with the clear evidence of adverse use, is sufficient to establish the element of hostility. *Bradt v. Giovannone*, 35 A.D.2d 322, 325–26, 315 N.Y.S.2d 961, 965 (3d Dep't 1970).

Also supportive of this court's decision is the holding in *Landgray Associates v. 450 Lexington Venture, L.P.*, 788 F.Supp. 776 (S.D.N.Y.1992). In that case, Judge Cederbaum, applying New York law, held that a negative easement for light and air had been diminished by the defendant's predecessor-in-interest, who had maintained two water towers that had obstructed the easement for greater that the statutory period. In response to the argument that defendant's predecessor had not declared its use to be hostile, the court reasoned that because the easement had been obstructed openly, notoriously and continuously for the prescriptive period, hostile use could be presumed. *Id.* at 782.

As in *Landgray*, the plaintiff in the present action argues that the statutory period for adverse possession has not run against him because he was never made aware of the hostile nature of the Coop's use. Plaintiff suggests that a hostile claim could not be inferred until he asked to use the easement and was refused. Pl. Reply Post-Tr. Mem. at 8. However, this line of argument may only succeed where an easement "exists on paper but has never actually been used." 788 F.Supp. at 783, n. 2. In the present action, evidence strongly suggests that plaintiff made use of the easement, but did so under the assumption that he was not entitled to use it.

2. *Exclusive Use*

The plaintiff also argues that, because the gate over the easement could be opened from the inside, and because access to the driveway was sufficient for the Ambassador's purposes until he was denied permission to park his car, the Coop's use of the easement was not sufficiently exclusive. Pl. Prop. Find. at 21. In support of the first contention, plain-

9. The parties have stipulated that the defendant's gate has been in place continuously since 1946.

tiff cites *Del Fuoco v. Mikalunas,* 118 A.D.2d 980, 500 N.Y.S.2d 84 (3d Dep't 1986), in which the appellate court held that obstructions placed upon an easement that fail to interfere with the owner's use and enjoyment also fail to establish the adverse user's "unfettered ownership" of the easement. 118 A.D.2d at 980, 500 N.Y.S.2d at 85.

However, *Del Fuoco* is inapposite precisely because this court has found that the Coop's erection of a gate over the driveway did interfere with the plaintiff's use and enjoyment of the easement. While the Ambassador remains free to traverse the driveway and exit from the Residence side of the gate, once the gate is closed he is wholly excluded from entering the driveway from the street side. This exclusion presents an insurmountable obstacle to his full enjoyment of the easement rights.[10]

In support of his second contention, the plaintiff cites *Welsh v. Taylor,* 134 N.Y. 450, 31 N.E. 896 (1892), in which the trial plaintiff sought to establish rights to an easement upon which trial defendant had erected a building and gate. The trial court held for the defendant on the grounds that plaintiff had failed to protest construction and had therefore abandoned his rights. The New York Court of Appeals reversed on the abandonment grounds, but discussed adverse possession, stating that "as long as there was no occasion on [the easement owners'] part to use it, the mere existence of a gate was not notice of any claim [of adverse possession]." 134 N.Y. 450 at 458, 31 N.E. at 899.

Based upon this language, the plaintiff argues by analogy that, since he had no occasion to require the gates to be opened until he sought to park his car in the driveway, the prescriptive period did not begin to run until his request was denied. Pl. Prop. Find. 21–22. However, there are several material differences between the position of the instant plaintiff and that of the *Welsh* plaintiff. First, there was evidence at trial that the Ambassador had generally asked for the Coop's permission before using the driveway, and until the incident giving rise to the present action, had never protested when permission was denied. *Infra* at 4. Therefore, it could hardly be said that the plaintiff was unaware of the obstruction.

In addition, the court's decision in *Welsh* was based largely on the lack of any evidence that the easement owners had ever used the property. 134 N.Y. at 456–57, 31 N.E. at 898. The court was reluctant to extinguish the plaintiff's rights by adverse possession without some indication that the easement owners were aware of the defendant's adverse claim. 134 N.Y. at 456, 31 N.E. at 898. The case is easily distinguished on its facts, since in the present action there is no question that the plaintiff Ambassador and his predecessors-in-interest were fully aware of the gate's existence and that it was locked a good portion of the time.

One case that is remarkably similar to the present one on its facts is *Speigel v. Ferraro,* 73 N.Y.2d 622, 541 N.E.2d 15, 543 N.Y.S.2d 15 (1989). In that case, plaintiff was the owner of an easement that defendant Ernie's Auto Body had obstructed by erecting gates to which only defendant had the keys. 73 N.Y.2d at 623, 541 N.E.2d at 16, 543 N.Y.S.2d at 16. There was also evidence that Ernie's had regraded the easement, installed lights and guard dogs, patrolled the premises and parked cars on the easement for a period of eleven years before plaintiff objected. *Id.* The lower court held for plaintiff on grounds that the defendant's use could not be deemed adverse until plaintiffs

---

10. In addition, plaintiff has argued that defendant is unable to claim exclusive use as a matter of law, because the New York Multiple Dwelling Law and the New York City Housing Maintenance Code prohibit doors that lock from the inside and other encumbrances over the ingress and egress points of a building. Plaintiff's Reply Post–Trial Memorandum ("Pl. Reply Post–Tr. Mem.") at 9–11, Multiple Dwelling Law §§ 104(1), 187(1)(h); New York City Housing Maintenance Code § 27–2007(c). Thus defendant is prohibited by law from erecting a gate over the driveway over which it has exclusive control. The court does not find this line of argument persuasive for two reasons. First, the court has already concluded that the Coop's use of the gate, coupled with its use and maintenance of the driveway, establishes exclusive use regardless of whether the gate may be opened from the inside. Second, the local ordinances cited by plaintiff are not intended to circumvent adverse possession law, and to use the defendant's compliance therewith against it would violate the public policy behind the ordinances.

had requested to use the easement. The New York Court of Appeals reversed, holding that:

> Ernie's exclusive use of the easement was under an apparent claim of right and was open and notoriously adverse to plaintiff's interest in the easement for an uninterrupted period of at least 10 years. Therefore, Ernie's must be deemed to have extinguished plaintiff's easement by adverse use in 1976 at the end of the 10-year period.

73 N.Y.2d at 628, 541 N.E.2d at 17–18, 543 N.Y.S.2d at 18. (citation omitted).

The court finds *Speigel* to be persuasive and binding on the facts of the present case. As in *Speigel*, defendant Coop has erected a gate over the disputed easement to which they retain sole possession of the key. *Infra* at 3. Likewise, the Coop has retained responsibility for maintaining and securing the driveway, on which Coop employees frequently park their cars. *Infra* at 4. Even more damaging to the plaintiff's case, however, is that defendant has persisted in these activities not just for the ten year statutory period, but for at least 45 years prior to the plaintiff's suit. Thus defendant's claim of hostile and exclusive use is supported by the facts.

■ Although plaintiff failed to raise it in his memoranda of law, the court believes that this discussion of adverse possession cannot be complete without considering the possibility that plaintiff's claim to the easement was revived by his use of the easement during the renovation and by the commencement of this action. Under New York law, an easement, once extinguished, is gone forever and cannot be revived. *Parsons v. Johnson*, 68 N.Y. 62 (1877); *Arena v. Prisco*, 81 N.Y.S.2d 627 (Sup.Ct.1948); 49 N.Y.Jur.2d § 193, 325. New York law strongly disfavors revival of extinguished easements, with the exception of easements by necessity. 49 N.Y.Jur.2d § 193, 326. As the disputed easement in the present action is not one of necessity, no further discussion is needed and the court concludes that plaintiff has not revived the easement by the minimal use during the renovation.

**D.** *The Effect of Plaintiff's Status as Representative of a Foreign Sovereign on the Applicability of New York Law.*

■ Plaintiff attempts to escape the ineluctable conclusion that he has lost his rights to the easement by arguing that his status as a foreign diplomat immunizes him from the effects of local law, such as adverse possession. Pl. Prop. Find. at 28–29. Precedent and equity suggest that plaintiff may not use international comity as both a shield and a sword, seeking on the one hand to enforce easement rights against the defendant and, on the other, to deny defendant an opportunity to present a defense. *See, National City Bank v. Republic of China*, 348 U.S. 356, 361–62, 75 S.Ct. 423, 427–28, 99 L.Ed. 389 (1955); *Abdulaziz v. Metropolitan Dade County*, 741 F.2d 1328, 1331 (11th Cir.1984). Therefore, by seeking relief from this court under New York law, plaintiff has rendered himself amenable to the jurisdiction thereof and must face the consequences.

**E.** *Public or Governmental Purpose of the Disputed Easement.*

■ Finally, plaintiff claims that the Residence is reserved for public or governmental purposes and is therefore immune from prescription by adverse use. Pl. Prop. Find. at 29. In New York, the prescriptive period may not run against a municipality where the property is held for a public or governmental, as opposed to a proprietary, purpose. *City of Tonawanda v. Ellicott Creek Homeowners Ass'n.*, 86 A.D.2d 118, 125, 449 N.Y.S.2d 116, 121 (4th Dep't 1982). However, plaintiff has failed to demonstrate how the easement could be construed as held for a public purpose. In *Lewis v. Village of Lyons*, 54 A.D.2d 488, 389 N.Y.S.2d 674 (4th Dep't 1976), the Appellate Division defined property in public use as "lands [the state] holds for the public, in trust for a public purpose, as highways, public streams, canals, public fair grounds." 54 A.D.2d at 490–91, 389 N.Y.S.2d at 676. As an appurtenance to a private residence, the disputed easement seems eminently proprietary.

## CONCLUSION

For the reasons set forth above, the court finds that plaintiff's easement has been extinguished through the adverse use of the defendant spanning over at least 45 years. Judgment is therefore entered for the defendant, and all right, title and interest of the plaintiff in the easement is terminated. The Court orders the Clerk of Court to present final judgment in accordance herewith.

So Ordered.