Henry Welsh, Appellant, *v.* John Taylor, Respondent.

One who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land, and his title will not be affected by non-user unless there is shown against him some adverse possession or loss of title in some of the ways recognized by law.

Mere non-user, however long continued, does not create an abandonment; to accomplish this there must be, in connection with the non-user, facts and circumstances showing an intention on the part of the owner of the easement to abandon it.

Where the easement is a right of way which is obstructed by a building thereon, to estop the owner of the easement from asserting his rights it is essential to prove that the person erecting the building was induced so to do by the conduct or language of said owner.

The mere erection and continuance of a gate across a way by one of several having an easement therein, is no evidence of abandonment by a co-tenant, in the absence of evidence that the gate was used to exclude him; nor is it evidence of any adverse claim on the part of the one erecting it, and acquiescence in the existence of the gate is not prejudicial to the rights of the co-tenant, unless an adverse claim is brought to his knowledge.

In an action to compel the removal of a building and gate upon land over which plaintiff had a right of way appurtenant to his premises, created by grant, defendant claimed that the building was erected with the knowledge and without objection on the part of the then owners of plaintiff's premises, and that plaintiff purchased with knowledge of this and so

was estopped. The then owners were a widow and three children; to the title of all plaintiff has succeeded. The evidence failed to show that any of the owners, except the widow, who was a life tenant and in possession of the premises, had knowledge or information of the erection. *Held*, that plaintiff was not estopped from asserting his right to the way unless all of his grantors were estopped; and that knowledge on the part of the widow did not affect the rights and did not estop the children.

It appeared that from 1846 to 1879, when it was torn down by plaintiff, a fence was maintained across the alley by defendant and his grantors, and that in 1842 a brick building and fence were erected by the then owner of plaintiff's lot across the alley, leaving no opening for access to the alley until 1879, when plaintiff opened a door through the fence. *Held*, that these facts did not establish an abandonment of the easement.

By the deed granting the easement it was subject to a just proportion of the expenses of repairs, taxes and assessments. It appeared that for forty years all these expenses had been paid by the owners of defendant's premises; during nearly all this period the said widow was in possession of plaintiff's premises as life tenant. It did not appear that any demand was ever made upon her children to pay their share of such expenses, or that two of them, who lived in distant places, knew that their mother had refused to pay. *Held*, that in the absence of such refusal, payment by defendant was voluntary and gave him no rights to the property; that as between the children and their mother it was her duty to pay the proportion of such expenses properly chargeable to them, and they had a right to assume she had done so; and so, that the mere fact of nonpayment was no evidence of an intention to abandon the easement.

(Argued June 10, 1892; decided October 1, 1892).

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department entered upon an order made November ⌐ 1889, which affirmed a judgment of the Special Term.

The plaintiff is the owner of property in New York known as Nos. 143 and 145 Franklin street, bounded easterly by an alleyway. Defendant is the owner of property known as Nos. 139 and 141 Franklin street, bounded westerly by said alley.

The common source of title was Alexander L. Stewart. He conveyed Nos. 143 and 145 to plaintiff's grantors with the "right and privilege of passing and repassing through said alley without hindering, obstructing or annoying such other

persons as may be legally privileged to pass through the same; and subject at all times hereafter to the bearing and paying of a just proportion of the expenses of regulating and repairing the said alley and of such taxes and assessments as may be laid thereon."

Nos. 139 and 141 were conveyed to defendant's grantors with a similar right expressed in similar language and the further right to extend any building erected or to be erected on the front part of the lot under or over said alley, but so as to leave the same seven feet nine inches wide and not less than one story high in the clear.

The alley was eighty-three feet deep and at a distance of sixty-two feet from Franklin street broadened out so that at its rear end and for a distance of nineteen feet therefrom it was about twenty-one feet wide. The evidence showed that in 1836 Smith Harriot acquired title to No. 143 which abutted upon the alley on the west with the easement in the alley. He died in 1844 leaving a will whereby he devised the property to his wife Mary Ann, for life and upon her death to his three children Frederick P., Smith and Estelle. Mrs. Harriot subsequently acquired title to No. 145. She died in 1877 and in 1879 plaintiff purchased both pieces of property. All deeds in plaintiff's chain of title conveyed the same rights in the alley subject to the same duties. The defendant and one James Wilson acquired title to a part of 139 and 141 in 1859, and the balance in 1872. Wilson conveyed his interest to defendant in 1877. Defendant's property was of an average depth exceeding one hundred feet, and included a lot about twenty-three feet by twenty-eight directly in the rear of the alley. The right to build over and under the alley was appurtenant to a lot fronting on Franklin street and sixty-two feet deep. In 1873 defendant and Wilson erected a four-story brick building across the full width of the alley and covering twenty feet of the rear thereof. They also maintained a gate at the entrance. This action was brought to compel the removal of the building and the gate and to enjoin defendant from interfering with plaintiff's easement.

The defense was (1) that during the ownership of the Harriots, the easement had been abandoned, and (2) that the building had been erected with the knowledge of the owners of 143 and 145 and without objection on their part, and that plaintiff had purchased with knowledge of such facts and was, therefore, estopped from asserting any right to use the alley.

The trial court found that the owners of 143 and 145, or some of them, knew that the building was being erected over the alley, and made no objection thereto, and that Mary Ann Harriot, Smith Harriot, and the other owners of 143 and 145, by their acts manifested an intention to abandon and did abandon the right to use the alley and as a conclusion of law that plaintiff had failed to establish any right to the easement and dismissed the complaint.

Further material facts are stated in the opinion.

*James C. Carter* for appellant.

*John E. Parsons* for respondent.

BROWN, J.   The judgment in this action was first reversed by the General Term, but upon a reargument it was affirmed. The final decision of the court rested upon the authority of *Snell* v. *Levitt* (110 N. Y. 595), and it appears from the General Term opinion that the proposition assumed to have been there decided, which was made applicable to this case, was that an easement acquired by grant may be extinguished by actual abandonment or non-user for a period less than twenty years.

That question was not involved in the facts of the case cited and its consideration was not necessary to its decision.

There was in evidence a release in writing of the easement executed by the grantee thereof who was the plaintiff's grantor made in consideration of seventy-five dollars and the grant of a new easement.   There was non-user of the easement in question for upwards of twenty years and use of the substituted easement during a large part of the same period.   The ques-

tion, therefore, whether non-user alone, for a greater or less period than twenty years, would have extinguished the easement was not before the court. Nor is there anything in the opinion to the effect that such question should be answered in the affirmative.

On the contrary, it was said by Judge EARL, in stating the law applicable to the extinguishment of such an easement, that it could not be lost by non-user for any length of time. All that the court there decided was that the release of the right claimed by plaintiff, followed by non-user for upwards of twenty years and use for a long period of a substituted easement, constituted conclusive evidence of its extinguishment, and that the trial court should have so ruled as a question of law. The main reliance of the plaintiff in that case was upon the fact that the release was not recorded, and was, therefore, void as to him, he being a purchaser without notice. But that claim was not sustained on the ground that the agreement to give up the easement and the unequivocal intention thereby expressed to abandon it, was the effectual and material thing to be considered and not the fact that such an agreement was expressed in writing and executed under seal. It was this element in the case that lead the learned judge, in writing the opinion of the court, to say that: "Non-user for a period of twenty years, under such circumstances as show an intention to abandon and give up the easement, is sufficient to extinguish it. And even an abandonment for a shorter period, under such circumstances as show an intention to give up and release an easement which is acted upon by the owner of the servient tenement, so that it should work harm to him if the easement was thereafter asserted, would operate to extinguish it."

The learned General Term evidently overlooked the qualifying language of the last sentence quoted. It was applicable to the case then before the court. There was the release and the substituted easement showing an unequivocal intention to abandon and in reliance on that act use of the waters of the spring in question by the grantor of the ease-

ment and those who subsequent to the release had acquired his title.    There was therefore a clear case of estoppel and that an easement created by grant could be extinguished by estoppel was the effect of the language used in reference to an abandonment for a less period than twenty years which I have quoted from the opinion.    In Washburn on Easements [4th ed.] p. 707, it is said that the question of abandonment is one of intention, but that time is not a necessary element therein.    "A cessor to use accompanied by an act clearly indicating an intention to abandon the right would have the same effect·as a release without reference to time."

And this proposition is fully sustained by authority.    (*Pope* v. *Devereux,* 5 Gray, 409 ; *The Queen* v. *Chorley*, L. R. [12 Q. B.] 519 ; *Moore* v. *Rawson,* 3 B. & C. 322 ; *Dyer* v. *Sanford,* 9 Met. 395 ; *Veghte* v. *Raritan Water Power Co.,* 4 C. E. Green, 143 ; *Crain* v. *Fox,* 16 Barb. 184 ; *Cartwright* v. *Maplesden,* 53 N. Y. 622.)

*Snell* v. *Levitt,* is not therefore an authority for the proposition that an easement created by grant can be extinguished by non-user.    Under the rule of that case an intention to abandon must exist in connection with and as a cause of non-user.    The case is distinguished from the one before us in that there was evidence of an unequivocal act releasing the easement.    The learned counsel for the respondent while not claiming that that case goes further than I have indicated contends that the evidence of intention to abandon which is necessary. to sustain the conclusion reached on the trial exist in the facts found by the court.    Giving him the full benefit of that decision we may examine this case in the light of its authority.

The judgment in this case rests upon two grounds: (1) An estoppel based upon knowledge of the erection of the building and omission to object to it by the owners of Nos. 143 and 145 Franklin street.    (2) Abandonment of the easement.

The trial court found: "That the owners of Nos. 143 and 145 Franklin street or some of them knew that the building was being erected over the alley and made no objection to the erection of the same."

This finding if supported by the evidence is insufficient to create an estoppel. The owners of 143 and 145 at the time of the erection of the building were the widow and three children of Smith Harriot. The plaintiff has succeeded to the title of all of them. And if any of the children who were owners of the fee were ignorant of the erection the act was a wrong to them and in violation of their rights. The plaintiff therefore is not estopped from asserting his rights in the alley unless all his grantors are estopped. The evidence does not show more than that Mrs. Harriot knew that the building was being erected.

She was a life tenant and was in the legal possession of the property. But knowledge on her part did not affect the rights of her children. There is no pretense that her daughter, Mrs. Schilling, ever received any information concerning the building or had any knowledge of it. Frederick P. Harriot testified that he was first informed of it in the summer of 1885 and Smith Harriot testified that he was informed by his mother that Taylor & Wilson were putting up a building in the rear of the lot, but there is no evidence that he knew at the time of its erection that it was upon any part of the alley. Smith Harriot and his brother resided at Cherry Valley in this state and were rarely in the city of New York.

It does not appear that the fact that Mrs. Harriot informed her son that a building was in process of erection was known to Taylor & Wilson, and nothing that any of the owners of No. 143 did induced them to build on the alley. Taylor & Wilson were not the owners of the fee of the alley.

They possessed the right to use the easement in common with the owner of the adjoining property. Their deeds conceded the right of equal enjoyment in the owners of such property and limited them to the enjoyment of the privilege of ingress and egress upon the terms set forth in those instruments.

In contemplation of law the rights in themselves and others with their limitations were known to them at the time of the erection of the building.

To have shown an estoppel it was essential for them to have proven that they were induced to erect the building by the conduct or language of their co-tenants in the easement in the alley. Here there was no inducement. They were not misled. They acted with the full understanding of the rights of the other owners and of the limitations upon themselves. No defense, therefore, can be based on an estoppel. The judgment if it can be sustained must rest upon the fact of abandonment. The appellant challenges this finding on the ground that it has no support in the evidence and we are of that opinion. The facts on which it rests are : (1) That from 1846 to 1879 when it was torn down by the plaintiff, a gate was maintained by the defendant and his grantors at the entrance to the alley on Franklin street. (2) That as early as 1842 a brick building was erected on the lot No. 143, extending along the alley thirty-six feet deep, the easterly wall of which had no opening through which access could be had to the alley,. and a high board fence without opening was maintained from the rear of the house to the end of the lot thus shutting out the owners and occupants of that lot from the alley until 1879 when plaintiff opened a door through the fence. (3) That for forty years no taxes or assessment on the alley and no part of the expenses of paving or repairing had been paid by the owners of 143 and 145, but the same had been paid by the owners of defendant's property. (4) That since 1842 the owners of 143 and 145 had made no use of the alley, but it had been exclusively used by defendant and his grantors. The last fact is of itself of no importance. Abandonment necessarily implies non-user, but non-user does not create abandonment no matter how long it continues. There must be found in the facts and circumstances connected with the non-user an intention on the part of the owner of the easement to give it up, but intention existing coupled with non-user will uphold a finding of abandonment. The evidence in this case is substantially undisputed and the question is do the facts I have referred to show an intention on the part of the plaintiff's grantors to give up and abandon the easement. It

is unnecessary to consider these facts in connection with Mrs. Harriot. Although she was the owner of No. 145 and may have intended to and did abandon any right she had in the alley as the owner of that lot yet as to No. 143 she was but a life tenant and no act of hers could prejudice or destroy the rights of the owners of the ˌfee of that property unless done with their knowledge and approval.

The erection and maintenance of a gate at the entrance to the alley on Franklin street is not a fact indicating an intention with reference to the easement on the part of the owner of No. 143. It was not their act. It would appear to be important only in connection with an adverse claim or possession on the part of those who erected and maintained it. Abandonment of the easement is not inconsistent with entire and full recognition by the owners of defendant's property of the rights and privileges of the owners of No. 143. But their exclusion from the alley would be a denial of their rights, and could exist only in connection with a claim adverse to such owners. It does not appear that any of the owners of 143 were ever excluded from the alley, or that any claim to the exclusive use by defendant or his grantors was ever made to or brought to their knowledge. But adverse possession, although alluded to in the Special Term opinion, needs no consideration, as it was not pleaded as a defense, and no finding was made upon it, and none was requested. The fact of the existence of the gate is of no importance in the case as evidence of abandonment, in the absence of evidence that it was used to exclude the owner of the adjoining property. It is not denied that no use was made of the alley by the owner of 143, and as long as there was no occasion on their part to use it, the mere existence of a gate was not notice of any adverse claim on the part of their cotenants. Nor would acquiescence in its existence be prejudicial to their rights, *unless an adverse claim was brought to their knowledge.* So long as it did not " hinder, obstruct or annoy others legally privileged to pass through the same," it·was not in violation of the terms upon which the easement was granted.

The erection of the house and fence without an opening on the east gives no indication of an intent to abandon the easement. It indicates no more than that the owner of 143 did not use the alley. It is evidence of non-user and nothing more.

But the non-payment of taxes and repairs is an act of some significance. Voluntary payment by defendant, of course, amounts to nothing, but if the failure to pay by plaintiff's grantor was coupled with a refusal to pay on the ground that the easement was not desired, I think it would be sufficient to support a finding of an intent to abandon and give up the right.

The owners of No. 143 must be deemed to have known that the privilege in the alley was subject to these payments, and if, for a long term of years, they refused to contribute, it would, in connection with the other facts, be strong evidence that the privilege was not desired and was given up. It would be no answer to this fact to say that they were liable under their deed, and could have been sued for half of the taxes and repairs. Perhaps such a suit could have been maintained against them, but certainly the other owners of the easement were not bound to sue them, and defendant has lost none of his rights by a failure to sue. If non-payment on the part of the owners of No. 143 is evidence of a surrender by them of the easement, the defendant may avail himself in this action of that defense. But the situation was somewhat peculiar. Mrs. Harriot, the widow, was the life tenant of No. 143. Her children had no right to the possession of the property until her death, and, therefore, no occasion to make use of the alley. She was bound to pay the taxes and repairs, and her children had a right to assume that she would do so. Her failure or refusal to pay the taxes could not, therefore, be regarded as a fact indicating any intention as to the easement on the part of her children, unless they knew of it and approved of it.

While it may be that the children were liable for a part of the expenses and taxes between themselves and the owner of the defendant's property, between them and their mother, the

life tenant, she was primarily bound to pay them and they might assume that she would do so. Mrs. Harriot as the owner of 145 and life tenant of 143 was bound to pay one-half while her children were liable only for such proportion as was properly chargeable to No. 143.

Now it does not appear that any demand was ever made upon Mrs. Harriot's children to pay their share of the expenses and taxes in the alley, nor does it appear that Mrs. Schilling or Frederick Harriot ever knew that their mother refused to pay them. The only evidence is that Smith Harriot was informed by his mother that she had been advised not to pay them and that she did not pay them. But he was not charged with any duty in reference to the property by his brother and sister and his knowledge then acquired cannot be imputed to them. In the absence of any refusal on the part of the children to pay, the payment by defendant was voluntary and of course gives him no rights to the property. I think, therefore, that the children of Mrs. Harriot had a right to assume that their mother would pay these taxes and expenses, and in the absence of any evidence that they knew she had refused so to do, the mere fact of nonpayment is no evidence that they intended to give up and abandon the use of the alley.

Mrs. Harriot did not die until 1877, and two years later her children conveyed No. 143 to plaintiff with the easement. As to Mrs. Schilling and Frederick Harriot there is no evidence to support the finding of the court.

This conclusion leaves the case to rest entirely upon the fact of non-user. And the easement having been created by deed, that is not sufficient to sustain the finding that it had been given up and was extinguished.

A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land and it is no more necessary that he should make use of it to maintain his title than it is that he should actually occupy or cultivate the land. Hence his title is not affected by non-user, and unless there is shown against him some adverse possession or loss of title in some of the ways recog-

nized by law, he may rely on the existence of his property with full assurance that when the occasion arises for its use and enjoyment he will find his rights therein absolute and unimpaired.

We do not deem it necessary to consider the question whether the plaintiff made out a case which would justify a court in adjudging that the building should be removed, or whether complete indemnity could be obtained by an award for the damages sustained. As a new trial must be had the evidence thereon may not be the same as is contained on the record before us and should occasion arise for the consideration of that question the trial court is the proper tribunal to determine it in the first instance.

The judgment should be reversed nd a new trial granted with costs to abide the event.

. All concur, except FOLLETT, Ch. J., not voting.

Judgment reversed.