### STILLMAN v. CITY OF OLEAN.

(Supreme Court, Equity Term, Cattaraugus County.   May, 1911.)

1. EASEMENTS (§ 17*)—HIGHWAYS—GRANTS.

Where conveyances of lots recognized a map of a tract divided into lots and streets, and used the map as a part of the description of the lots, the grantees acquired a right to have a street defined on the map kept open; the conveyances creating in the grantees an easement therein.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 47; Dec. Dig. § 17.*]

2. DEDICATION (§ 35*)—ACCEPTANCE.

That land dedicated for a street as delineated on a map of a tract divided into lots and streets was not used by grantees of lots holding under deeds recognizing and using the map as a part of the description of the lots, and that another has occupied the land within a street as thus delineated, do not prevent the municipality from accepting the offer of dedication, taking possession of the strip, removing buildings therefrom, and actually opening a street thereon.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 68–71, 75, 76; Dec. Dig. § 35.*]

3. EASEMENTS (§ 30*)—RIGHT OF WAY—NONUSER.

Under the rule that nonuser will not create an abandonment of an easement created by deed, the right of grantees of lots, holding under deeds recognizing a map of a tract divided into lots and streets, and using the map in describing the lots, to have a strip defined on the map as a street kept open, cannot be destroyed by nonuser.

[Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 77–79; Dec. Dig. § 30.*]

4. ADVERSE POSSESSION (§ 60*)—STREET DEDICATED TO PUBLIC.

In 1845 a conveyance of lots in a tract recognized a map of the tract divided into lots and streets, and subsequent conveyances of lots recognized the map and described the lots with reference thereto. A grantee taking title by deed referring to such map subdivided in 1888 his purchase and eliminated a street delineated on the map, and he held pos-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

session until 1909 under the deed referring to such map. *Held* not to show adverse possession of the strip delineated on the map as a street.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–314; Dec. Dig. § 60.*]

5. DEDICATION (§ 38*)—HIGHWAYS—REVOCATION.
A revocation of a dedication of land for a street can only be made by the person making the dedication.

[Ed. Note.—For other cases, see Dedication, Dec. Dig. § 38.*]

6. DEDICATION (§ 35*)—STREETS—ACCEPTANCE.
Where an offer to dedicate land for streets as delineated on a map of a tract divided into lots and streets remained in force from the time it was made in 1845 until 1910, at which time the municipality took formal action to open a street, the act of the municipality was an acceptance of the offer to dedicate, and the lands within the streets became public highways.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 68–71; Dec. Dig. § 35.*]

Action by Frank V. R. Stillman against the City of Olean for an injunction restraining the city from opening Thirteenth street and removing a dwelling house owned by plaintiff. Complaint dismissed.

Dana L. Jewell, for plaintiff.
Henry Donnelly, for defendant.

BROWN, J.   On July 12, 1845, the Olean Land & Hydraulic Company executed a conveyance to William S. Miller of—

"all those 20 certain lots, pieces, or parcels of land, situate in the village of Olean, in the county of Cattaraugus, and known and described upon a certain map of the said·village made by J. T. Gosselien, surveyor, and filed in the office of the clerk of the county of Cattaraugus on or about the 28th day of December, 1836, as lots numbered from 1 to 20, inclusive, in the block bounded on the north by State street and east by King street. * * * Also blocks numbered * * * 112, 113, * * * on the said map, and all the streets bounding the said blocks on the north and east. * * * Also blocks numbered 92, 93, * * * on said map, and all the streets bounding the said block on the east side. * * *"

Upon the Gosselien map there·referred to block numbered 92 was bounded on the north by State street, on the east by Thirteenth street, on the south by Henley street, and on the west by Fourteenth street. Block numbered 93 was bounded on the north by State street, on the east by Twelfth street, on the south by Henley street, and on the west by Thirteenth street. Block No. 112 was bounded on the north by Henley street, on the east by Thirteenth street, on the south by Irving street, and on the west by Fourteenth street. Block No. 113 was bounded on the north by Henley street, on the east by Twelfth street, on the south by Irving street, and on the west by Thirteenth street. By several mesne conveyances, all of which conveyed a portion of said blocks 92, 93, 112, and 113, "described on a map of said village made by T. J. Gosselien," L. F. Lawton on the 23d day of January, 1888, acquired title to a part of each of said blocks by a description commencing in the center of block 92, 5 chains and 99· links south of State street; thence east, parallel with State street, 14¾ rods; thence south, parallel with the center line of block 92, 30.28

rods; thence west, parallel to State street, 14¾ rods; thence north, on center line of block 92, to place of beginning—which description includes the land indicated on the Gosselien map as Thirteenth and Henley streets, between blocks 92, 93, 112, and 113.

Shortly after the date of this last conveyance, and on May 17, 1888, there was filed in the office of the clerk of Cattaraugus county a map of this last described parcel of land entitled "E. E. Alderman & Co.'s. Subdivision of Part of Blocks 92, 93, 112, and 113, Olean Village," in and by which map substantially all the land set apart on the Gosselien map as Thirteenth street was appropriated or divided into lots, and a street crossing Henley street through the center of such lands, 40 feet wide, as indicated, named Prospect avenue. On June 21, 1890, Lawton conveyed all the lands purchased by him January 23, 1888, to one Colwell, "described on a map of said village  *  *  *  by T. J. Gosselien," excepting lots 2, 3, 10, and two (2) feet off the east side of lot 4, according to the map of the Garvey (Alderman) subdivision. On March 12, 1909, Helen M. Lawton Wood, who took title through the last will and testament of L. F. Lawton, executed a quitclaim deed to the plaintiff of lots 2, 3, 10, and two feet off the east side of lot No. 4, according to the Alderman map of subdivision of parts of blocks 92, 93, 112, and 113 of the Gosselien survey. Lot 3 of this subdivision is entirely within the lines of Thirteenth street, as delineated on the Gosselien map. There is standing on this lot 3 a dwelling house that has been thereon for 22 years.

On September 3, 1910, the common council of defendant adopted a resolution approving a petition made by owners of lots on each side of Thirteenth street south of, and adjoining, the Alderman subdivision, asking that Thirteenth street be opened from Henley street to Irving street, and served a notice upon the plaintiff requiring him to remove his dwelling house from Thirteenth street within 30 days, and notifying him that unless he did so the same would be removed by the superintendent of streets of defendant, at plaintiff's expense, to restrain which act the plaintiff brings this action.

[1] The contention of the plaintiff is that the lands within the lines of Thirteenth street, as indicated on the Gosselien map and occupied by the plaintiff, have never been dedicated and accepted as a street; that, if there ever was a dedication of such lands, it has been abandoned by lapse of time and the acts of the various owners, through whom all the petitioners and he himself take title. The fact that every conveyance from 1845 down to the plaintiff's grantor has not only recognized the Gosselien map, but used it as a part of the description of the parcels of land conveyed, and the fact that the conveyances to the petitioners were made with reference to that map, show enough to establish in the petitioners a right to have Thirteenth street kept open from Irving street to Henley street as a village or city street, as indicated, defined, and delineated on the Gosselien map. The setting apart of the lands designated Thirteenth street on that map as a street, and the acceptance of conveyances referring to this map by every holder of the title, have created in the petitioners an easement or right to use the lands claimed by the plaintiff as a street or high-

way; and when the common council of the defendant decided to open the street from Henley to Irving, it was an acceptance of the dedicated lands for such a purpose.

[2, 3] While it is true that the plaintiff's lands and those formerly occupied by Dickinson to the south have never been used by those owning this easement or right of way, and plaintiff's lands have been occupied exclusively for residence purposes for more than 20 years, yet such facts do not prevent the defendant from accepting the offer of dedication, taking possession of the land claimed by plaintiff, removing the buildings therefrom, and actually opening a street thereon. The right to have this land in question kept open as a street was acquired by the petitioners by deed expressly recognizing the existence of a street. Such right cannot be destroyed by nonuser.

[4] There has been no adverse possession by plaintiff and his predecessors in interest for 20 years. The fact is that there has been no claim of title adverse to the rights of adjoining property owners in the lands delineated on the Gosselien map for any length of time. The possession of the grantors of the plaintiff was subservient to, and in recognition of, the right of lot owners to have Thirteenth street opened as shown on the Gosselien map. The fact that Garvey, or Lawton, taking title by deed referring to the Gosselien map, saw fit to subdivide their purchase and eliminate Thirteenth street, could not affect the right of Holmes, Foley, and other petitioners to have the benefit of a street shown on a map referred to in their deeds. Such subdivision or map was not the basis of Lawton's title. He and his wife held possession until March, 1909, under a deed in which the lands are stated to be described on the Gosselien map; and hence there has been no adverse possession prior to March, 1909, by Lawton or his wife under a claim of title hostile to the rights secured by the Gosselien map and referred to in their deed. There has been no abandonment by nonuser or otherwise. Nonuser for 20 years will not create an abandonment of an easement, when the easement is created by deed. Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896, 18 L. R. A. 535; Smyles v. Hastings, 22 N. Y. 217; Olean v. Steyner, 135 N. Y. 341, 32 N. E. 9, 17 L. R. A. 640; Bridges v. Wyckoff, 67 N. Y. 130.

[5] The filing of the Alderman map, eliminating Thirteenth street thereon, and the building of plaintiff's dwelling house within the lines of Thirteenth street by Lawton in 1888, was not a revocation of the dedication of such lands as a street by the Olean Land & Hydraulic Company in 1845. A revocation could only be made by the power creating such dedication, viz., the original grantor. In re Commissioners of Public Parks, 53 Hun, 556, 6 N. Y. Supp. 779.

[6] If the foregoing conclusions are sound, the land between Henley and Irving streets, within the lines delineated on the Gosselien map, were offered as a highway by the holders of the title in 1845. Such offer, never having been revoked, was in force September 3, 1910, at which time the common council of the defendant took formal action to open the street. Such act was an acceptance of the offer, and the lands on which plaintiff's dwelling stands became a highway. Matter of Hunter, 163 N. Y. 542, 57 N. E. 735, 79 Am. St. Rep. 616.

The plaintiff for more than 15 years has known that the lot in question lies entirely within Thirteenth street. He is engaged in the real estate business, and knows all about the Gosselien map and its relation to blocks 92, 93, 112, and 113, and at the time he took his conveyance in March, 1909, he conversed with his grantor as to the probabilities of his losing the land, because it was in Thirteenth street. His then contemplated loss has arrived, his dwelling is in a legal highway, and he is not entitled to an injunction restraining its removal.

Plaintiff's complaint dismissed, with costs.