JOHN M. MUELLER AND JANET RAE MUELLER, HUSBAND AND WIFE, APPELLANTS, AND CEDAR VALLEY PARTNERSHIP, A NEBRASKA PARTNERSHIP, APPELLEE, V. HOWARD J. BOHANNON AND GRACE BOHANNON, HUSBAND AND WIFE, AND HAROLD B. MCGOWAN AND SHIRLEY M. MCGOWAN, HUSBAND AND WIFE, APPELLEES.

589 N.W.2d 852

Filed February 26, 1999.    No. S-97-1067.

David E. Pavel for appellants.

Nile K. Johnson and Charles A. Nye for appellees the Bohannons and the McGowans.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Appellees Howard J. Bohannon (Bohannon) and Grace Bohannon claim an easement across property owned by appellants John H. Mueller (Mueller) and Janet Rae Mueller. The easement was created by deed in the Bohannons' chain of title. The Muellers filed this quiet title and declaratory judgment action asking the district court to declare (1) that the claimed easement was not sufficiently described, (2) that it was not

properly recorded, or (3) that the Bohannons and their predecessors in title abandoned the easement. The district court granted the Muellers summary judgment. On appeal, the Nebraska Court of Appeals reversed, and remanded the cause on the abandonment issue. On remand, the district court ruled that the easement had not been abandoned. The Muellers appeal.

This appeal presents the question, Where an easement is created by express grant or deed, does evidence that the easement holder and/or its predecessors did not use the easement for more than the prescriptive 10-year period raise a presumption of abandonment and shift the burden of proof to the easement holder? We conclude that an easement created by deed does not raise a presumption of abandonment and that the burden did not shift to the Bohannons. However, we determine that the Muellers have proved by clear and convincing evidence that the Bohannons have abandoned the easement. Accordingly, we reverse.

## BACKGROUND

The property in question encompasses tax lots in the south half of the northeast quarter of Section 28, Township 17 North, Range 12 East of the 6th P.M., in Washington County, Nebraska. The following is a sketch depicting the road and easement and other features relevant to this appeal. The sketch is for illustrative purposes only and does not purport to be drawn to scale.

In a warranty deed dated December 22, 1976, appellees Harold B. McGowan (McGowan) and Shirley M. McGowan sold Tax Lots 20 and 21 to James Culver and Nola Culver (Culver). Prior to selling the lots, McGowan constructed a road that began on its east end at a county road and ran westerly through what is now Tax Lot 28, then turned southwest and ran through what is now Tax Lot 29 and then between Tax Lots 20 and 21. The illustration above represents the road by solid lines. The deed to the Culvers granted "a permanent easement for ingress and egress to the premises . . . ." The illustration above represents the actual easement by dotted lines. McGowan stated that his intent was that the easement that the deed described represent the road he constructed.

In June 1982, the Culvers sold the Bohannons Tax Lots 12, 13, 20, and 21 by warranty deed. The permanent easement in the previous deed to the Culvers was also contained in the deed to the Bohannons. The Bohannons reside east of Tax Lots 12 and 13 and have direct access to a county road from their residence. After the 1982 land purchase, the Bohannons owned a continuous strip of property from their residence to Tax Lots 20 and 21. However, a vehicle like a tractor or four-wheel-drive vehicle would be necessary to reach Tax Lots 20 and 21 through their property, because of the lay of the land.

In September 1984, the McGowans sold Tax Lots 28 and 29 to Cedar Valley Partnership by warranty deed, and Cedar Valley in turn sold the lots to the Muellers by a land contract dated October 5, 1987. Prior to purchasing the property, Mueller noticed the approximately 25-foot-wide sliver of property separating Tax Lots 20 and 21 and testified that he approached Bohannon with an offer to exchange portions of land to make Tax Lot 29 more usable. Mueller testified that Bohannon declined and made no mention that Bohannon claimed an easement on the property between Tax Lots 20 and 21.

In the spring of 1989, a dispute arose concerning the validity of the easement. Bohannon testified that he first informed Mueller of the claimed easement that spring, telling Mueller that he had the right to use the road as owner of an easement. Mueller objected, telling Bohannon that there was no easement on the property and that Bohannon had no business on his prop-

erty. A couple of days later, Bohannon presented Mueller with documentation of the easement.

The record, however, reflects that the easement is not actually located on the road that the Bohannons utilized. Rather, a 1996 survey shows that the easement that the Bohannons' and the Culvers' deeds describe is a 20-foot strip of land beginning within Tax Lot 21, running northeasterly through Tax Lot 21's northern boundary into Tax Lots 28 and 29 and then running easterly through Tax Lot 28 to a county road, as outlined by dotted lines on the illustration above. Mature trees stand upon much of the actual easement. However, the record reveals that McGowan planted those trees prior to the sale to the Culvers.

The Muellers and Cedar Valley filed this quiet title and declaratory judgment action in November 1993 against the Bohannons and the McGowans. The district court granted the Muellers summary judgment. The Court of Appeals reversed on appeal, finding that (1) the McGowan-to-Culver deed described the easement with sufficient detail to convey title and (2) the Muellers had constructive notice that the easement burdened their property. *Mueller v. Bohannon*, 96 NCA No. 26, case No. A-95-237 (not designated for permanent publication). However, the Court of Appeals determined that a fact question existed as to whether the Bohannons abandoned the easement and remanded the cause for trial on the issue of abandonment.

In a separate action, the Bohannons filed suit against the Muellers, asking the district court to declare that the Bohannons obtained an easement by prescription over the road that they actually used. The Bohannons' petition included a survey map indicating that, as shown by the above illustration, the easement they were granted does not follow the existing roadway. The Muellers answered in part that the Bohannons could not have obtained an easement by prescription because the Bohannons' use of the roadway was done with the permission of the Muellers and their predecessors in title. The Bohannons' lawsuit was joined for trial with the Muellers' quiet title and declaratory judgment action.

At trial, Bohannon admitted that he never used the actual easement described in his deed. He said the Bohannons did not use it because they did not know that the actual easement was

something other than the existing roadway. He said that McGowan had told them that the existing roadway was the easement. Culver testified that to access Tax Lots 20 and 21 the Culvers used, exclusively, the existing roadway. Culver stated that they never had a surveyor confirm where the easement was located, but, rather, assumed that stakes outlining the east side of Tax Lot 21 and the west side of Tax Lot 20 indicated where the easement was.

Bohannon testified that he fenced Tax Lots 20 and 21, including the north side of Tax Lot 21, in order to maintain cattle on the property.

The district court, in separate orders, determined in the Muellers' lawsuit that the actual easement was not abandoned and determined in the Bohannons' lawsuit that the Bohannons did not obtain a prescriptive easement over the existing roadway. The Bohannons did not appeal the order relating to their prescriptive easement claim. The Muellers appealed the district court's abandonment ruling, which is now before us.

## ASSIGNMENTS OF ERROR

The Muellers assign, restated, that the district court erred in (1) finding that the written existing easement in favor of the Bohannons was not abandoned; (2) failing to find that the easement was not used for a period of more than 10 years; (3) failing to find that the nonuse of the easement raised a presumption of abandonment not rebutted by the Bohannons; (4) failing to find that the easement had been abandoned because the existing easement was never intended to be an easement, was never utilized as such, and could not be practically utilized as a roadway easement; and (5) failing to find that the Bohannons exhibited an intent to abandon the existing easement.

## SCOPE OF REVIEW

A quiet title action sounds in equity. *Gustin v. Scheele*, 250 Neb. 269, 549 N.W.2d 135 (1996); *Poppleton v. Village Realty Co.*, 248 Neb. 353, 535 N.W.2d 400 (1995). On appeal from an equity action, the appellate court tries factual questions de novo on the record and, as to questions of both fact and law, reaches a conclusion independent of the findings of the trial court, sub-

ject to the rule that where credible evidence is in conflict on material issues of fact, the reviewing court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. See, *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996); *Marten v. Staab*, 249 Neb. 299, 543 N.W.2d 436 (1996); *Poppleton v. Village Realty Co., supra*; *Engelhaupt v. Village of Butte*, 248 Neb. 827, 539 N.W.2d 430 (1995).

## ANALYSIS
### PRESUMPTION OF ABANDONMENT FROM MERE NONUSE

The record clearly reflects that the Bohannons never used the actual easement described in their deed from the time that they purchased the property until the filing of this lawsuit—a period of over 11 years. The Muellers argue that the Bohannons' nonuse of the easement for more than the 10-year prescriptive period raises a presumption that the Bohannons abandoned the easement. The Muellers contend that pursuant to *Hillary Corp. v. United States Cold Storage, supra*, the presumption shifted the burden to the Bohannons to prove that they did not intend to abandon the easement, that the Bohannons failed to produce any rebutting evidence, and thus that the district court erred in finding that the Bohannons had not abandoned the easement. The Bohannons distinguish *Hillary Corp.* on grounds that that case involved an implied easement rather than one created by deed, as in this case. The Bohannons argue that where an easement is created by deed or grant, mere nonuse of the easement for no matter how long neither raises any presumption nor shifts the burden of proof.

Abandonment is the voluntary and intentional relinquishment of a right to property. See *Davco Realty Co. v. Picnic Foods, Inc.*, 198 Neb. 193, 252 N.W.2d 142 (1977). An easement may be abandoned by unequivocal acts showing a clear intention to abandon and terminate the right, or it may be done by acts in pais without deed or other writing. *Mader v. Mettenbrink*, 159 Neb. 118, 65 N.W.2d 334 (1954); *Williams v. Lantz*, 123 Neb. 67, 242 N.W. 269 (1932). See *Davco Realty Co. v. Picnic Foods, Inc., supra.* " 'Time is not a necessary element; it is not the duration of the nonuser, but the nature of the

acts done by the dominant owner, or of the adverse acts acquiesced in by him, and the intention which the one or the other indicates, that are important . . . .' " *Williams*, 123 Neb. at 72, 242 N.W. at 271. Abandonment of an easement must be pled and proved, the burden of proof being on the party alleging it. *Hillary Corp. v. United States Cold Storage, supra; Masid v. First State Bank*, 213 Neb. 431, 329 N.W.2d 560 (1983); *Agnew v. City of Pawnee City*, 79 Neb. 603, 113 N.W. 236 (1907), *overruled on other grounds, Hillary Corp. v. United States Cold Storage, supra*.

Notwithstanding the rule that it is the party alleging abandonment that has the burden of proof, we first stated in *Agnew v. City of Pawnee City, supra*, and restated in *Hillary Corp. v. United States Cold Storage*:

> An intention to abandon an easement cannot be inferred from the mere fact that the easement was not used for a period of years in excess of the prescriptive period. See, *Masid v. First State Bank, supra; Agnew v. City of Pawnee City, supra*. However, nonuse of an easement for a period sufficient to create an easement by prescription will raise a presumption to defeat the right, but this nonuse is open to explanation and may be rebutted by proof that the owner had no intention to abandon his easement while thus omitting to use it.

*Id.* at 415, 550 N.W.2d at 900. We then stated that if the easement holder or its predecessor used the easement within the 10-year prescriptive period, the burden of proving an intent to abandon the easement remains with the party asserting abandonment. *Id.* However, if the easement holder and/or its predecessors did not use it within the prescriptive period, a presumption of abandonment arises and the burden of rebutting the presumption is on the easement holder by proving that it and/or its predecessors did not intend to abandon the easement. *Id.*

The Bohannons correctly assert that each occasion to which we have applied this burden-shifting rule involved implied or prescriptive easements, rather than easements created by express grant or deed. See, *Hillary Corp. v. United States Cold Storage, supra* (involving implied easement from former use); *Masid v. First State Bank, supra* (involving prescriptive ease-

ment); *Agnew v. City of Pawnee City, supra* (involving prescriptive easement). The question then is, Does evidence of nonuse of an easement created by express grant or deed, for the prescriptive period, shift the burden of proof to the easement holder such that if the easement holder does not rebut the evidence the party asserting abandonment may succeed without presenting any further evidence of abandonment?

The law was settled by the time of our decision in *Agnew* that, at least as to easements created by express grant or deed, evidence of nonuse could not by itself prove abandonment no matter how long the nonuse. See, *Edgerton v. McMullan*, 55 Kan. 90, 39 P. 1021 (1895) (stating that the law is well settled that mere nonuser of an easement granted by deed does not constitute abandonment); *Welsh v. Taylor*, 134 N.Y. 450, 31 N.E. 896 (1892) (holding that mere nonuse of an easement created by deed does not affect title to the easement); *Dill v. Board of Education of Camden*, 47 N.J. Eq. 421, 435-36, 20 A. 739, 744 (1890) (stating "[i]t is well settled that mere non-user for any length of time, no matter how long, will not destroy or extinguish an easement arising, as here, out of express grant, as distinguished from one arising out of long adverse user"); *Lindeman v. Lindsey*, 69 Pa. 93, 99-100 (1871) (stating "[i]f the instrument contain the grant of an easement or privilege to either party in the land or the water, against such a grant there is no statute of limitation without actual hostile and adverse possession, and certainly no prescription or presumption from mere non-user"); Emory Washburn, A Treatise on the American Law of Easements and Servitudes, ch. V, § 6 at 717 (4th ed. 1885) (stating "if the easement has been acquired by deed, no length of time of mere non-user will operate to impair or defeat the right").

Additionally, *Struve v. Republican V. R. Co.*, 2 Neb. (Unoff.) 585, 590-91, 89 N.W. 604, 606 (1902), although only its conclusion was adopted by this court, stated: "Whatever may be the rule in relation to the abandonment of an easement acquired otherwise than by deed, the authorities all agree that non-user of an easement acquired by deed for any length of time is not an abandonment."

Moreover, modern authority is in agreement. Nonuser is relevant evidence of abandonment, but must be combined with other facts which indicate an intent of the easement holder to abandon its use. *Franck Bros., Inc. v. Rose*, 301 S.W.2d 806 (Mo. 1957); *Owens Hardware Co. v. Walters*, 210 Ga. 321, 80 S.E.2d 285 (1954); *Simms v. Fagan*, 216 Minn. 283, 12 N.W.2d 783 (1943); *First Nat. T. & S. Bank v. Smith*, 284 Mich. 579, 280 N.W. 57 (1938); *Fruit Growers Co. v. Donald*, 96 Colo. 264, 41 P.2d 516 (1935); *McHugh v. Haley*, 61 N.D. 359, 237 N.W. 835 (1931); *Wallkill Farms Homeowners v. Velazquez*, 205 A.D.2d 681, 613 N.Y.S.2d 641 (1994); *Feldman v Monroe Twp Board*, 51 Mich. App. 752, 216 N.W.2d 628 (1974); *Alabama Power Co. v. Dailey*, 31 Ala. App. 441, 18 So. 2d 142 (1944); 4 Powell on Real Property § 34.20 (1998); 3 Herbert Thorndike Tiffany, The Law of Real Property § 825 (3d ed. 1939 & Cum. Supp. 1996); 7 Thompson on Real Property § 60.08(b)(3)(ii) (David A. Thomas ed. 1994); Annot., Loss of Easement, 25 A.L.R.2d 1265, § 2-4 (1952); 5 Restatement of Property § 504, comment *d.* (1944). We have stated that the important facts to prove abandonment are " 'the nature of the acts done by the dominant owner, or of the adverse acts acquiesced in by him, and the intention which the one or the other indicates . . . .' " *Williams v. Lantz*, 123 Neb. 67, 72, 242 N.W. 269, 271 (1932).

*Welsh v. Taylor, supra*, aptly explained the rationale why mere nonuse of an easement created by express grant or deed cannot be sufficient to prove the easement was abandoned. *Welsh* stated:

> A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land, and it is no more necessary that he should make use of it to maintain his title than it is that he should actually occupy or cultivate the land. Hence his title is not affected by non-user, and unless there is shown against him some adverse possession or loss of title in some of the ways recognized by law, he may rely on the existence of his property with full assurance that when the occasion arises for its use and enjoyment he will find his rights therein absolute and unimpaired.

134 N.Y. at 460-61, 31 N.E. at 899.

Thus, we agree with the Bohannons and conclude that the burden of proof did not shift to the Bohannons upon evidence that the easement was not used for more than 10 consecutive years. Mere nonuse for any period of time cannot by itself extinguish an easement acquired by deed.

### FACTS INDICATING ABANDONMENT

Having determined that the burden of proof did not shift to the Bohannons, we determine that the Muellers still have the burden of proof and must show additional facts indicating that the Bohannons or their predecessor easement holders, the Culvers, intended to abandon the easement, in order to prevail. The evidence proving abandonment must be clear and convincing. *Koshian v. Kirchner*, 139 A.D.2d 942, 527 N.Y.S.2d 921 (1988); *Franck Bros., Inc. v. Rose, supra*; 7 Thompson on Real Property, *supra*.

The Muellers assert that additional facts in the record indicate an intent to abandon the actual easement. The Bohannons contend that the Muellers "did nothing more than prove that the [Bohannons] were mistaken as to the true location of the easement and, instead of using the granted easement, used a roadway alongside of it." Brief for appellees the Bohannons and the McGowans at 5. On that basis, the Bohannons argue that the Muellers failed to produce sufficient evidence proving the Bohannons intended to abandon the easement.

We first note that while the proof of nonuse is not sufficient to prove abandonment by itself, that proof is nonetheless objective evidence indicating that the Bohannons intended to abandon the easement. The strength of this evidence is heightened by the fact that the only other owners of the easement, the Culvers, also never used the easement. Thus, not only was this easement not used for about 17 years, it was *never* used. The easement was never cleared or prepared for potential use.

The Muellers argue that the fact that the Culvers and McGowans accessed the property by means other than the easement created by the deed is evidence that they intended to abandon the property. We disagree. "[T]he fact that the easement holder finds a more convenient alternative route does not

deprive the easement holder of the easement that remains for the holder's use and enjoyment whenever the holder has occasion to use the right." *Jackvony v. Poncelet*, 584 A.2d 1112, 1117 (R.I. 1991). See, *Witt v. McKenna*, 600 A.2d 105 (Me. 1991); *Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15 (Ky. App. 1991); *Gagnon v. Carrier*, 96 N.H. 409, 77 A.2d 868 (1951). Such is the case here. Additionally, the Muellers stated in their answer to the Bohannons' companion case that any use that the Bohannons made of the roadway was done with permission of the Muellers and their predecessors in title. The Bohannons' use of the roadway, then, was not an unequivocal act indicating an intent to abandon the actual easement.

The Muellers next argue that the Culvers erected a fence along the north side of Tax Lot 21 which would block the existing easement and would be evidence of abandonment. Culver testified that a fence existed on the north side of Tax Lot 21. However, her testimony is unclear as to whether she meant that such a fence existed when the Culvers purchased the land, whether she meant they placed a fence there, or whether she was simply observing that a fence exists presently along the north side of Tax Lot 21, which is true.

However, Bohannon testified at trial that he erected a fence along the north side of Tax Lot 21. He stated:

Q. . . . Now, with regard to Exhibit No. 22, would you point out to us where the fences are and when they were erected or if they were erected when you bought the property?

A. No, I bought them. I put them up myself.

. . . .

Q. Is there a fence line on the north of tax lot 21?

A. There is a fence line on the north side of 21 and on the west side of 21.

. . . .

Q. Now, you put all those fences up?

A. Right.

Q. When did you erect those fences?

A. Whenever I got cattle. I can't tell you for sure what year that was.

Q. Were there any fences in place in any of this area when you first bought the land?

A. No.

"If an owner of an easement, by his own act, renders the use of the easement impossible, or himself obstructs it in a manner inconsistent with its further enjoyment, the easement will be considered as abandoned by him." *Toelle v. Preuss*, 172 Neb. 239, 241-42, 109 N.W.2d 293, 294 (1961). Bohannon's construction of the fence, then, is objective evidence of abandonment.

After considering the Muellers' arguments and conducting a de novo review of the record, we conclude that the evidence of nonuse from the time of the easement's creation, combined with Bohannon's construction of a fence across the easement, is sufficiently clear and convincing evidence to show that the Bohannons intended to abandon the actual easement.

However, the Bohannons argue that "it would be logically impossible for them to [abandon the easement] because they did not know the location of the easement." Brief for appellees the Bohannons and the McGowans at 6. This argument misses the mark because if the Bohannons did not know of the actual location of the easement, they should have known. The deed of conveyance to the Bohannons expressly described the easement's location. The Court of Appeals determined, and it is the law of the case, that the McGowan-Culver deed's description of the easement was adequate. That description is identical to the easement description in the deed of conveyance to the Bohannons, as the Court of Appeals noted. A survey would have revealed the true location of the easement, as evidenced by the survey prepared for the trial in this case. However, the record indicates the Bohannons did not have a survey conducted when they purchased the property, nor did they rely on any survey. Equity aids the diligent and not the negligent. See, *Abels v. Bennett*, 158 Neb. 699, 64 N.W.2d 481 (1954); *Peters v. Huff*, 63 Neb. 99, 88 N.W. 179 (1901). The Bohannons had the means in their possession to obtain actual knowledge of the easement. See *Abels v. Bennett, supra*. Thus, we conclude on these facts that the Bohannons' stated lack of actual knowledge is not persuasive as to their argument.

## CONCLUSION

Evidence that the Bohannons did not use the actual easement granted by their deed, for whatever length of time, raised no presumption that shifted the burden of proving abandonment to the Bohannons. However, the record contains sufficient evidence objectively indicating, clearly and conclusively, that the Bohannons abandoned the actual easement. Accordingly, we reverse.

REVERSED.