271 P.3d 479

David M. SCALIA and Beth J.
Scalia, husband and wife,
Plaintiffs/Appellees,

v.

Robin GREEN and Verdie Green,
husband and wife, Defen-
dants/Appellants.

No. 1 CA–CV 10–0488.

Court of Appeals of Arizona,
Division 1, Department E.

Oct. 20, 2011.

The Adams Law Firm PLLC By Jeffrey R. Adams, Prescott, Attorneys for Plaintiffs/Appellees.

Robert Blakey, Jr., PC By Robert Blakey, Jr., Prescott, Attorneys for Defendants/Appellants.

## OPINION

JOHNSEN, Judge.

¶ 1 Robin and Verdie Green argue the superior court erred by entering summary judgment in favor of David and Beth Scalia on the Scalias' claim to quiet title in a pair of easements. Because the Greens offered insufficient evidence as a matter of law to support their contention that the Scalias abandoned one of the easements, we affirm the judgment in part. We vacate and remand the judgment in favor of the Scalias as to the second easement.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Scalias own lots 233 and 235 in the Idylwild Tract in Prescott; the Greens own neighboring lots 210, 211 and 212. In 1987, the Greens' predecessors-in-interest granted a non-exclusive easement for ingress, egress and utilities running over and across lots 210, 211 and 212 for the benefit of lots 210 and 233, among others. The 1987 easement terminates at Thumb Butte Road at the northern boundary of lot 212.

¶ 3 In 2000, another property owner granted the Scalias an exclusive easement for ingress, egress and utility purposes over and across a portion of her property for the exclusive benefit of lot 233. Generally speaking, the 2000 easement extends from the northwest corner of lot 233 and terminates at Thumb Butte Road. The route of the 2000 easement is adjacent to the 1987 easement in part and terminates just north of and adja-

cent to the terminus of the 1987 easement. In 2003, the same property owner granted a separate non-exclusive easement for ingress, egress and utility purposes in favor of lot 233 and lot 210. The 2003 easement is coextensive in part with the 2000 easement.

¶ 4 In granting the Scalias' motion for summary judgment, the court quieted title in favor of the Scalias as to the 1987 easement and barred the Greens from asserting any right, title or interest in that easement inconsistent with the Scalias' interests. The court also quieted title in favor of the Scalias as to the 2000 easement, ruling that the Greens have no right, title or interest in that easement. Further, the court enjoined the Greens from making any use of the 2003 easement and awarded the Scalias $12,104.37 in attorney's fees and $227.26 in costs.

¶ 5 The Greens timely appealed. We have jurisdiction of their appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

## DISCUSSION

### A. Standard of Review.

¶ 6 Summary judgment may be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." Orme Sch. v. Reeves, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the superior court properly applied the law. Eller Media Co. v. City of Tucson, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We view the facts and the inferences to be drawn from those facts in the light most favorable to the party

against whom judgment was entered. Prince v. City of Apache Junction, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

### B. The 1987 Easement.

¶ 7 An easement is a right to use the land of another for a specific purpose. Etz v. Mamerow, 72 Ariz. 228, 231, 233 P.2d 442, 444 (1951). An express grant of an easement defines the grantee's rights. Squaw Peak Cmty. Covenant Church of Phoenix v. Anozira Dev., Inc., 149 Ariz. 409, 412, 719 P.2d 295, 298 (App.1986); Restatement (Third) of Property: Servitudes ("Restatement") § 4.1(1) (2000) ("A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument. . . ."). Once an easement is recorded, it runs with the land and burdens the servient estate's successors. Siler v. Ariz. Dep't of Real Estate, 193 Ariz. 374, 383, 972 P.2d 1010, 1019 (App.1998).

¶ 8 The Greens argue the superior court erred in entering summary judgment quieting title in the Scalias' favor as to the 1987 easement because they say the Scalias abandoned that easement when they began to use the adjacent 2000 easement.

¶ 9 An owner of an easement may abandon it by relinquishing his or her rights to the easement. Restatement § 7.4.[1] "However, because abandonment is a voluntary, unilateral act on the part of the servitude beneficiary that creates a windfall to the owner of the servient estate, often without any corresponding benefit to the abandoning beneficiary, abandonment is difficult to establish." Id. cmt. a. The mere failure to use an easement, even over a lengthy period of time, "is seldom sufficient to persuade a court that abandonment has occurred." Id. cmt. c. Although the amount and nature of evidence required to prove abandonment varies with the circumstances, "[a]ffirmative acts rendering use or enjoyment of the servitude benefit extremely difficult, or unequivocal statements of intent coupled with actions in-

---

1. In the absence of Arizona legal authority, we look to the Restatement. Webster v. Culbertson, 158 Ariz. 159, 162, 761 P.2d 1063, 1066 (1988).

consistent with continued existence of the servitude, should be required as a basis for finding abandonment." *Id.*

¶ 10 When an easement has been granted by deed, acts indicating abandonment must decisively, conclusively and unequivocally establish the holder's clear intent to abandon the easement. *See Smith v. Muellner*, 283 Conn. 510, 932 A.2d 382, 395 (2007); *Whipple v. Hatcher*, 283 Ga. 309, 658 S.E.2d 585, 586 (2008). By itself, non-use of an easement created by deed is insufficient to prove intent to abandon, regardless of the length of non-use. *Smith*, 932 A.2d at 394–95; *Mueller v. Bohannon*, 256 Neb. 286, 589 N.W.2d 852, 857–58 (1999); *Moyer v. Martin*, 101 W.Va. 19, 131 S.E. 859, 861 (1926) ("[I]t is universally held that mere nonuse[ ] of an easement by grant, however long, will not extinguish the right, unless otherwise provided by statute or by provision in the grant itself."). The non-use must be coupled with acts or omissions evidencing the holder's intent to abandon the easement. *Mueller*, 589 N.W.2d at 859.

¶ 11 The facts in the record here are similar to those in a Restatement illustration in which a new public road allows the owners of an easement an alternative access route. *See* Restatement § 7.4 illus. 1. Even if the owners of the easement begin using the public road rather than the easement, abandonment is not established without more evidence of the owners' intent. *Id.*

¶ 12 In response to the Scalias' motion for summary judgment, the Greens offered no facts to support their contention that the Scalias intended to abandon the 1987 easement. On appeal, the Greens assert without citation to any admissible evidence that the Scalias paved the 2000 easement without a permit. Even assuming the truth of that assertion for purposes of argument, the Greens offer no authority for the proposition that one abandons an easement for ingress and egress by acquiring or constructing an alternative means of ingress and egress. Indeed, the law is to the contrary. *See id.;*

*Mueller*, 589 N.W.2d at 860 (use of more convenient route by easement holder was not an unequivocal act indicating intent to abandon easement).

¶ 13 The Greens also argue the Scalias' predecessors-in-interest released any interest to the 1987 easement. The Greens cite a recorded release given in 1993 by the then-owners of lot 233 of an easement recorded earlier that year. In interpreting an easement created by deed or grant, we apply the rules of contract construction. *See Long v. City of Glendale*, 208 Ariz. 319, 328, ¶ 27–29, 93 P.3d 519, 528 (App.2004). When a deed is unambiguous, we will not consider extrinsic evidence of the parties' intent. *Id.* at ¶ 29.

¶ 14 The released 1993 easement on which the Greens rely does not support their argument. The 1993 easement was not located along or anywhere near the 1987 easement. The Greens contend the release of the 1993 easement "incorporated, by its language, the 1987 easement." The release of the 1993 easement, however, recited not the 1987 easement but instead referred to the 1993 easement by book and page number. Contrary to the Greens' argument, neither the release nor the easement referenced in the release referred to the 1987 easement.

¶ 15 The Greens further argue that the released 1993 easement was merged with the 1987 easement, so that by releasing the 1993 easement, the Scalias' predecessors-in-interest meant also to release the 1987 easement. Given the locations of the two easements, we see no logic to the Greens' argument that in order for the 1993 easement to have meaning, it must have merged with the 1987 easement.

¶ 16 In sum, in the absence of any evidence to support the proposition that the Scalias or their predecessors-in-interest intended to release their rights in the 1987 easement, we conclude the superior court properly entered judgment quieting title in favor of the Scalias as to that easement.[2]

2. The Scalias moved to strike an argument the Greens made in their reply brief concerning the scope of the judgment as to the 1987 easement. We deny that motion as moot because the Greens' argument misconstrued the judgment. The judgment does not bar the Greens from using the 1987 easement; it only provides that the Greens may not assert any right, title or

## C. The 2000 Easement.

¶ 17 The 2000 easement grant states in pertinent part, "Said easement is for ingress, egress and public utilities and is to be appurtenant to and exclusively for the following described property ... Lot 233, IDYLWILD TRACT...." The Scalias argued on summary judgment that the 2003 easement, which purported to grant to the owners of lot 210 an easement over a portion of the 2000 easement, was void because the 2000 easement had granted exclusive rights to the owners of lot 233.

¶ 18 In response to the Scalias' motion for summary judgment, the Greens did not dispute the validity of the 2000 easement, nor did they offer any facts or argument in opposition to the Scalias' contention that the 2003 easement as a matter of law could not grant any rights to the Greens over the 2000 easement. On appeal, the Greens acknowledge they failed to contest the Scalias' motion for summary judgment on the claim involving the 2000 and 2003 easements; they assert they "did not need to respond to this portion of the Motion because the grant of the 2003 easement is clear."

¶ 19 Applying the rules of contract construction to deeds granting rights in an easement, we give effect to the intent of the contracting parties. *Spurlock v. Santa Fe Pac. R.R. Co.*, 143 Ariz. 469, 474, 694 P.2d 299, 304 (App.1984). When a deed is unambiguous, the intent of the parties must be discerned from the four corners of the document. *Id.; see* Restatement § 4.1(1).

¶ 20 In the context of servitudes, the term "exclusive" means "the right to exclude others." Restatement § 1.2 cmt. c; *see MGJ Corp. v. City of Houston*, 544 S.W.2d 171, 174 (Tex.Civ.App.1976) (owner of exclusive easement is entitled to undisturbed use of the property even against owner of servient estate). There are varying degrees of exclusivity in the rights to an easement. Restatement § 1.2 cmt. c. "At one extreme, the holder of the easement ... has no right to exclude anyone from making any use that does not unreasonably interfere with the uses authorized by the servitude.... At the

other extreme, the holder of the easement ... has the right to exclude everyone, including the servient owner, from making any use of the land within the easement boundaries." *Id.* The degree of exclusivity granted by a particular easement is determined by the language used in the instrument. *Id.; see* Restatement § 4.1(1).

¶ 21 The language in the 2000 easement is unequivocal: The easement is granted for "ingress, egress and public utilities and is to be appurtenant to and exclusively for the following described property ... Lot 233." Given the easement's express language, we conclude the easement granted to the owners of lot 233 (now the Scalias) the right to exclude the Greens from the easement. *See Gray v. McCormick*, 167 Cal.App.4th 1019, 84 Cal.Rptr.3d 777, 782, 788 (2008) (grant of "exclusive easement of access, ingress and egress ... for the benefit of [specified lot]" gave power to exclude use by all others).

¶ 22 Accordingly, the 2003 easement is void to the extent that it purported to grant to anyone other than the owners of lot 233 an easement coextensive with the exclusive easement granted in 2000 to the owners of lot 233. Because the 2000 easement did not reserve the grantor's right to grant additional rights over the same strip of land, the grantor lacked authority to convey the additional easement after she conveyed exclusive rights in the 2000 easement to the owners of lot 233.

¶ 23 The superior court correctly recognized the exclusivity of the 2000 easement, but went beyond the intent of the parties by ordering that the Greens had no right, title or interest in any portion of the 2003 easement. Although the 2000 easement granted in favor of lot 233 entitles the owner of that lot to exclude the Greens from the 2000 easement, it has no effect outside the boundaries of that easement. Therefore, on remand, the superior court should modify its order accordingly.

## D. Equitable Considerations.

¶ 24 The Greens further argue the superior court erred by granting the Scalias' mo-

interest in the 1987 interest *adverse to* the Scali-

as' right, title or interest in that easement.

tion for summary judgment because the Scalias' aim is to "disrupt [the Greens'] estate and ownership of ... property with no reason given for their intentions" and that the result is inequitable. In support of their argument, the Greens contend, without citing any evidence, that the Scalias have built a paved road along the 2000 easement without a building permit. They also argue that natural conditions make it all but impossible to construct a road on the 1987 easement. Even assuming the Greens had offered evidence to support these allegations, we do not see how they required the superior court to deny the Scalias' right to quiet title in their easements.

¶ 25 "The right to possess, to use and to enjoy land upon which an easement is claimed remains in the owner of the fee except in so far as the exercise of such right is inconsistent with the purpose and character of the easement." *Etz,* 72 Ariz. at 231, 233 P.2d at 444 (citing *Pinkerton v. Pritchard,* 71 Ariz. 117, 223 P.2d 933 (1950)). Although the holder of an easement cannot unreasonably interfere with the enjoyment of the servient estate, Restatement § 4.10, the Greens offered no evidence on summary judgment that the Scalias have interfered with the Greens' enjoyment of their property interests.

### E. Attorney's Fees.

¶ 26 Finally, the Greens argue the superior court erred by awarding the Scalias their attorney's fees and costs. An award of attorney's fees is left to the discretion of the superior court and will not be reversed on appeal absent an abuse of discretion. *Orfaly v. Tucson Symphony Soc'y,* 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App.2004). We hold the superior court did not abuse its discretion in awarding costs and attorney's fees to the Scalias. Further, we grant the Scalias their costs and reasonable attorney's fees incurred on appeal pursuant to A.R.S. § 12-1103 (2003), contingent on their compliance with ARCAP 21.

### CONCLUSION

¶ 27 We affirm the superior court's summary judgment except that we vacate the portion of the judgment enjoining the Greens' use or enjoyment of portions of the 2003 easement not coextensive with the exclusive easement granted to lot 233 in 2000. As to that issue, we remand to the superior court for further proceedings consistent with this decision.

CONCURRING: PATRICIA A. OROZCO and JOHN C. GEMMILL, Judges.